# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Tucker v. Soy Capital Bank & Trust Co., 2012 IL App (1st) 103303**

---

| | |
|---|---|
| Appellate Court Caption | JAMES C. TUCKER, BRIAN K. ADCOCK, SHELLY K. ADCOCK, TERRY D. CAUSEY, JOHN W. FLORA, LISA S. FLORA, JANE F. LAWSON, JEFF A. LADD, BRENT R. LOCKE, JEFFREY D. SAMS, DANIEL T. TOUW, RON G. WEADE, and DIANNE K. WEADE, on Behalf of Themselves as Individuals, and as Representatives of a Class of Other Persons Similarly Situated, Plaintiffs-Appellants, v. SOY CAPITAL BANK AND TRUST COMPANY, a/k/a Soy Capital Wealth Management, Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-10-3303 |
| Filed | June 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant bank owed plaintiffs no fiduciary duty as trustee to investigate and verify the true value of a third-party investment fund, later alleged to be a "Ponzi" scheme, where the individual retirement account agreement between the bank and plaintiffs expressly released the bank from liability for any losses and stated the bank had no duty to investigate the actual market value of plaintiffs' investments in the fund. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-42951; the Hon. LeRoy K. Martin, Judge, presiding. |

| Judgment | Affirmed. |
|---|---|
| Counsel on Appeal | Stephen P. Carponelli and Don F. Taylor, both of Carponelli & Krug, of Chicago, Richard C. Leng, of Law Offices of Richard C. Leng, of Barrington, and Christopher M. Ellis and Shane M. Mendenhall, both of Bolen, Robinson & Ellis, of Decatur, for appellants. |
| | W. Scott Porterfield, Adam Oyebanji, and Andrew E. Nieland, all of Barack, Ferrazzano, Kirschbaum & Nagelberg, of Chicago, for appellee. |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion. Presiding Justice Lavin and Justice Fitzgerald Smith concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiffs opened individual retirement accounts (IRAs) with the defendant custodian bank, Soy Capital Bank and Trust Company, a/k/a Soy Capital Wealth Management (Soy), and brought an action against Soy for losses as the result of an alleged "Ponzi" scheme by the owner of the fund in which they invested their IRAs. The circuit court dismissed the plaintiffs' first amended complaint for failure to state a cause of action for breach of fiduciary duty, breach of the Illinois Trusts and Trustees Act (760 ILCS 5/1 *et seq.* (West 2008)), professional negligence, breach of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2008)), breach of contract, civil conspiracy, breach of duty under a bailment, and wilful and wanton misconduct. We hold the circuit court did not err in dismissing all claims against Soy because the IRA agreement signed by plaintiffs, which encompassed disclosures and additional agreements and was incorporated in their first amended complaint, specifically provided that the defendant custodian bank had no duty to investigate the actual value of the funds and plaintiffs agreed to release and hold the bank harmless from any losses as a result of their direction of investment in the IRAs.

¶ 2                                        BACKGROUND

¶ 3    The instant appeal is from the circuit court's dismissal pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)) of plaintiffs' complaint against Soy based on its alleged fiduciary duty to accurately report the value of plaintiffs' individual retirement accounts with Hubadex, Inc. (Hubadex). Soy is an Illinois bank and trust company which maintains offices at 455 North Main Street in Decatur, Illinois, and conducts business in Cook County, Illinois. Plaintiffs are all Illinois residents who opened individual retirement accounts with Soy. Since the late 1990s William A. Huber and

Hubadex sold limited partnership interests in the Quarter Funds and the Symmetry Fund and participation agreements in the Trimester Funds, each of which was held out as a pooled investment vehicle. William A. Huber directed all potential investors in Hubadex to contact Soy as the only bank they could use to invest with Hubadex. The 13 plaintiffs in this case collectively invested over $2.5 million in the Hubadex fund through the Soy IRA accounts.

¶ 4     On September 29, 2009, the United States Securities and Exchange Commission (SEC) filed a complaint against William A. Huber and Hubadex in the United States District Court for the Northern District of Illinois, Eastern Division. The SEC complaint alleged that Huber and Hubadex had defrauded Hubadex's investors of at least $16 million since 2006 as part of a "Ponzi" scheme.

¶ 5     Prior to September 29, 2009, each plaintiff executed an IRA application with Soy, which included an investment direction form, "Individual Retirement Account Provisions, Disclosures, and Consents," and a financial disclosure. These documents were attached to plaintiff's first amended complaint and filed under seal in the proceedings below. The application to open the IRA provided in a paragraph right above the signature line the following:

> "I certify that the information provided by me on this Application is accurate, and that I have received a copy of IRS Form 5305-A, *Individual Retirement Custodial Account*, a Disclosure Statement, and a Financial Disclosure. *I agree to be bound by the terms and conditions found in the Agreement, Disclosure Statement, Financial Disclosure, and amendments thereto. I assume sole responsibility for all consequences relating to my actions concerning this IRA*. I understand that I may revoke this IRA on or before seven (7) days after the date of establishment. I have not received any tax or legal advice from the custodian, and I will seek the advice of my own tax or legal professional to ensure my compliance with related laws. *I release and agree to hold the IRA custodian harmless against any and all claims or losses arising from my actions*." (Emphases in original and added.)

The IRA application was signed by each plaintiff and one of Soy's agents, with Soy in its capacity as custodian of the account.

¶ 6     Each plaintiff also executed an investment direction form provided by Soy, which directed that plaintiff specify what percentage of money in the new IRA would be invested in each of the three funds offered by Hubadex. Soy charged plaintiffs fees for acting as custodian and trustee of their IRAs, which included a minimum annual fee as well as an annual fee based on market value.

¶ 7     The "Individual Retirement Account Additional Provisions, Disclosures, and Consents" merely provided for the disclosure of the IRA owner's name and other information obtained pursuant to a rule of the SEC only upon written direction, and further explained that the fees for recordkeeping and administrative services for money market and mutual funds.

¶ 8     The financial disclosure contained the following provision regarding the projection method which was selected for the value of the IRA:

> "Projection Method Four: The Value of Your IRA Cannot be Reasonably Projected.
>
> The value of your IRA is solely dependent on the performance of your IRA's

investments such as mutual funds, stocks, bonds, and other securities and cannot be reasonably projected. However, we are required to provide the following information as part of this financial disclosure:

1. Earnings. The method for computing and allocating the earnings on your IRA investments may be found in the prospectus or similar materials applicable to your IRA investments. The method may vary depending on the provider and type of the investments."

¶ 9 The relevant portion of section 8.10 of the financial disclosure expressly provides the following:

"Representations and Indemnity. You represent that any information you and/or your agents provide to us is accurate and complete, and that your actions comply with this Agreement and applicable laws governing retirement plans. You understand that we will rely on the information provided by you, and that we have no duty to inquire about or investigate such information. *We are not responsible for any losses or expenses that may result from your* information, *direction*, or actions, including your failure to act. *You agree to hold us harmless*, to indemnify, and to defend us *against any and all actions or claims arising from, and liabilities and losses incurred by reason of your* information, *direction*, or actions. Additionally, you represent that *it is your responsibility to seek the guidance of a tax or legal professional for your IRA issues.*

We are not responsible for determining whether any contributions or distributions comply with this Agreement and/or the federal laws governing retirement plans. We are not responsible for any taxes, judgments, penalties or expenses incurred in connection with your IRA, *or any losses that are a result of events beyond our control*." (Emphases added.)

¶ 10 Section 8.11 of the financial disclosure further provided:

"8.11. Investment of IRA Assets.

(a) Investment of Contributions. *We will invest IRA contributions and reinvest your IRA assets as directed by you* based on our then-current investment policies and procedures. If you fail to provide us with investment direction for a contribution, we will return or hold all or part of such contribution based on our policies and procedures. We will not be responsible for any loss of IRA income associated with your failure to provide appropriate investment direction.

(b) Directing Investments. All investment directions must be in a format or manner acceptable to us. You may invest in any IRA investments that you are qualified to purchase, and that we are authorized to offer and do offer at the time of the investment selection, and that are acceptable under the applicable laws governing retirement plans. Your IRA investments will be registered in our name or our nominee's name for the benefit of your IRA. Specific investment information may be provided at the time of the investment.

Based on our policies, we may allow you to delegate the investment responsibility of your IRA to an agent by providing us with written notice of delegation in a format acceptable to us. We will not review or guide your agent's decisions, and you are

responsible for the agent's actions or failure to act. *We are not responsible for directing your investments, or providing investment advice, including guidance on the suitability or potential market value of various investments.* For investments in securities, we will exercise voting rights and other similar rights only at your direction, and according to our then-current policies and procedures." (Emphases added.)

¶ 11　Section 8.09 of the financial disclosure provided:

"Interpretation. If any question arises as to the meaning of any provision of this Agreement, then we shall be authorized to interpret any such provision, and our interpretation will be binding upon all parties."

¶ 12　Prior to February 2005, the Illinois Securities Department performed a securities audit of Hubadex and its officers, directors, employees, agents, affiliates, successors and assigns. As a result of that audit, on or about February 10, 2005, Hubadex executed a stipulation to entry of a consent order entered on February 22, 2005, finding that Hubadex had violated the Illinois Securities Law of 1953 (815 ILCS 5/1 (West 2008)) and ordering Hubadex to pay a monetary fine of $50,000 to the Securities Audit Enforcement Fund.

¶ 13　Plaintiffs filed this eight-count class action complaint for the following claims: (1) breach of fiduciary duty; (2) breach of the Illinois Trusts and Trustees Act (760 ILCS 5/1 *et seq*. (West 2008)); (3) professional negligence; (4) breach of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq*. (West 2008)); (5) breach of contract; (6) civil conspiracy for aiding and abetting a fraudulent scheme; (7) breach of duty under a bailment; and (8) wilful and wanton misconduct.

¶ 14　Soy moved for dismissal pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2008)) for failure to state a cause of action, which the court granted. On September 22, 2010, the court entered an order dismissing plaintiffs' amended complaint with prejudice. The order noted that plaintiffs were electing to stand on the complaint as to count IV. Plaintiffs appealed and ask us to reverse this order and remand the cause with directions to reinstate counts I through VIII.

¶ 15　　　　　　　　　　　　　　　　ANALYSIS

¶ 16　The only issue before us is whether the circuit court erred in dismissing plaintiffs' complaint for failure to state a cause of action on each of the claims alleged in their first amended complaint. The central issue in this case is whether defendant bank owed plaintiffs a fiduciary duty to investigate and verify the true value of the IRAs. Plaintiffs argue that the following documents attached to the complaint establish that Soy had a fiduciary duty to investigate and verify the value of the Hubadex funds: (1) the investment direction form; (2) the fee schedule; (3) the additional provisions, disclosures and consents form; and (4) the annual disclosure form. Soy argues that all the documents constituting the agreement between it and plaintiffs expressly state that defendant had no such duties. In its motion to dismiss below, Soy stated that "[b]ecause Hubadex is now under investigation by the Securities and Exchange Commission ('SEC') and may be insolvent, Plaintiff has sued the Bank in an effort to find a 'deep pocket.' " On appeal, Soy maintains that it did not owe plaintiffs a fiduciary duty to investigate and report the actual value of the Hubadex fund and

that its duty was simply to allocate the funds as directed by plaintiffs, and that plaintiffs expressly released Soy from any liability for losses from the investment in the IRAs.

¶ 17 A motion to dismiss brought under section 2-615 tests the legal sufficiency of the complaint. In ruling on a section 2-615 motion, a court must accept as true all well-pleaded facts in the complaint and all reasonable inferences therefrom. *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004) (citing *American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274, 279 (2000), and *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 491 (1999)). The critical inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Vitro*, 209 Ill. 2d at 81 (citing *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 86 (2002), and *Weatherman*, 186 Ill. 2d at 491). In ruling on a section 2-615 motion attacking a complaint, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences therefrom in favor of the plaintiffs. *Vitro*, 209 Ill. 2d at 81. The critical question on appeal is whether the allegations of the complaint, when viewed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 382 (2004). We further note that in granting defendant's section 2-615 motion, the trial court dismissed plaintiffs' complaint with prejudice. A complaint should be dismissed with prejudice under section 2-615 only if it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recover. *Andersen v. Mack Trucks, Inc.*, 341 Ill. App. 3d 212, 219 (2003). Our standard of review on section 2-615 dismissals is *de novo*. *Vitro*, 209 Ill. 2d at 81.

¶ 18 Plaintiffs first argue that the circuit court erred in not considering each of the documents constituting plaintiffs' agreement with Soy and they refer to the court's oral findings at the hearing on the motion to dismiss. However, we note that plaintiffs have not filed on appeal the report of proceedings for the hearing on the motion to dismiss. " 'Any doubts arising from the inadequacy of the record will be resolved against [the party appealing].' " *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 155 (2005) (quoting *Weaver v. Midwest Towing, Inc.*, 116 Ill. 2d 279, 285 (1987), citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). The appellant "has the burden of showing error; any doubt arising from incompleteness of the record will be resolved against the appellant." *People v. Kirkpatrick*, 240 Ill. App. 3d 401, 406 (1992). "An issue relating to a circuit court's factual findings and basis for its legal conclusions obviously cannot be reviewed absent a report or record of the proceeding." *Corral*, 217 Ill. 2d at 156 (citing *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001) ("Where the issue on appeal relates to the conduct of a hearing or proceeding, this issue is not subject to review absent a report or record of the proceeding.")). Where the record is incomplete, we will indulge every reasonable presumption favorable to the judgment order from which the appeal is taken. *In re Marriage of Cepek*, 230 Ill. App. 3d 1045, 1046 (1992). Moreover, it will be presumed that the trial court heard sufficient evidence and argument to support its decision. *In re Marriage of Cepek*, 230 Ill. App. 3d at 1046. Thus, we presume the circuit court indeed reviewed the documents incorporated in plaintiffs' first amended complaint in ruling on the motion. We now review the sufficiency of the allegations for each of plaintiffs' claims in turn.

¶ 19 Breach of Fiduciary Duty

¶ 20    Plaintiffs first argue that its amended complaint sufficiently stated a cause of action for breach of fiduciary duty against Soy. Plaintiffs alleged that Soy owed them the following fiduciary duties: to account properly for the property held in plaintiffs' accounts; to maintain the property held in the accounts; to protect the interests of plaintiffs in the property in their accounts; to diligently invest and diversify the property held in plaintiffs' accounts; not to benefit personally from the property in plaintiffs' accounts at their expense; and to perform a due diligence investigation of Hubadex and the value of its funds; as well as a duty of custody and safekeeping of securities. Plaintiffs also allege that as a fiduciary Soy owed plaintiffs a duty of care and a "duty to warn [p]laintiffs of its 'concerns' about Hubadex and its considerations regarding eliminating its Hubadex IRA accounts." In addition to these duties, plaintiffs also alleged "a special relationship was established at the time [p]laintiffs' opened [*sic*] an IRA account with Soy that created certain duties and obligations that were owed by Soy to [p]laintiffs." Plaintiffs further alleged that they "placed peculiar trust and confidence in Soy to open the IRA account[s] and provide true and accurate statements to them." Plaintiffs also alleged and incorporated by reference affidavits averring that "one or more of Soy's agents advised [p]laintiffs regarding certain Hubadex investments and gave [p]laintiffs reassurances about their Hubadex investment." Plaintiffs alleged that "Soy was in the position to take reasonable steps to verify that the reported value of the Hubadex Fund was true and accurate and to verify that the reported value of [p]laintiffs' account was true and accurate, and as a result Soy possessed a significant degree of dominance and superiority over [p]laintiffs in the verification and accuracy of the Hubadex Fund's value and the true and accurate reporting of the account value."

¶ 21    To state a claim for breach of fiduciary duty, plaintiffs must allege the following: the existence of a fiduciary duty, a breach of that duty, and damages proximately caused by the breach. *Neade v. Portes*, 193 Ill. 2d 433, 444 (2000). However, as Soy points out, "Illinois courts have refused to add any additional duties to those set forth in any contract between a bank and its customer even if the bank is a 'fiduciary.' " *First Midwest Bank/Joliet v. Dempsey*, 157 Ill. App. 3d 307, 313 (1987).

¶ 22    Here plaintiffs' first amended complaint incorporated all the relevant documents forming plaintiffs' agreement with Soy, which establish an explicit release of Soy and, in particular, releases Soy from any duty to investigate the market value of plaintiffs' investment in the IRAs. We may consider these documents under section 2-615 because they were attached to, and incorporated by reference, the first amended complaint. Agreements that are attached as an exhibit to a complaint are considered to be part of the pleading, and facts stated in the exhibit are considered as having been alleged in the complaint. *International Insurance Co. v. Sargent & Lundy*, 242 Ill. App. 3d 614, 622 (1993). Thus, a motion to dismiss a complaint with attached exhibits is still considered as one brought under section 2-615 under which we look only to the sufficiency of the pleadings. *International Insurance Co.*, 242 Ill. App. 3d at 622.

¶ 23    "Furthermore, matters contained in such exhibits which conflict with allegations of the

complaint negate any contrary allegations of the complaint." *International Insurance Co.*, 242 Ill. App. 3d at 622 (citing *Ford v. University of Illinois Board of Trustees*, 55 Ill. App. 3d 744 (1977)). Despite plaintiffs' repeated assertions of duty in the body of their first amended complaint, the attached documents constituting their agreement with Soy establish that they do not have any claim for breach of fiduciary duty.

¶ 24    "Where a release is clear and explicit, the court must enforce it as written." *International Insurance Co.*, 242 Ill. App. 3d at 623 (citing *Continental Illinois National Bank & Trust Co. v. Sax*, 199 Ill. App. 3d 685, 693 (1990)). Illinois courts recognize releases that are specific and pertain to claims that are within the contemplation of the parties. See *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 23 (2003) (holding that the claims were based on alleged breaches of fiduciary duty which were explicitly released, and thus the claims were barred by the release).

¶ 25    Pursuant to Soy's agreement with plaintiffs, plaintiffs released Soy from any losses due to their investment direction. The financial disclosure specifically provided that it was plaintiffs' responsibility to seek the guidance of a tax or legal professional. The financial disclosure also specifically set forth that Soy had no duty whatsoever to investigate the market value of plaintiffs' investments in the IRAs. The application itself, in clear language right above plaintiffs' signatures, provides: "I release and agree to hold the IRA custodian harmless against any and all claims or losses arising from my actions," which include plaintiffs' investment directions, whereby they directed an investment of their money into the Hubadex funds.

¶ 26    Further, plaintiffs have not alleged any facts in their first amended complaint that would vitiate the release. "[T]he defenses that may be asserted to vitiate a release include fraud in the execution, fraud in the inducement, mutual mistake and mental incompetence.*" Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1005-06 (2010) (citing *McCormick v. McCormick*, 118 Ill. App. 3d 455, 466 (1983), citing *Blaylock v. Toledo, Peoria & Western R.R. Co.*, 43 Ill. App. 3d 35, 37 (1976)). Plaintiffs have not alleged any facts which set forth any of these defenses to the release.

¶ 27    Plaintiffs additionally argue that certain oral statements by Soy's agents regarding the Hubadex fund establish a breach of fiduciary duty. However, as this court held in *Nilsson v. NBD Bank of Illinois*, 313 Ill. App. 3d 751, 762 (1999):

> " ' "One is under a duty to learn, or know, the contents of a written contract before he signs it, and is under a duty to determine the obligations which he undertakes by the execution of a written agreement. [Citation.] And the law is that a party who signs an instrument relying upon representations as to its contents when he has had an opportunity to ascertain the truth by reading the instrument and has not availed himself of the opportunity, cannot be heard to say that he was deceived by misrepresentations." ' "
> *Nilsson*, 313 Ill. App. 3d at 762 (quoting *Belleville National Bank v. Rose*, 119 Ill. App. 3d 56, 59 (1983), quoting *Leon v. Max E. Miller & Son, Inc.*, 23 Ill. App. 3d 694, 699-700 (1974)).

¶ 28    Plaintiffs were under a duty to determine the contents of their agreement with Soy concerning the IRAs and any claims regarding oral representations countering the clear

language of their contract with Soy are insufficient under the law. Plaintiffs here signed an agreement clearly indicating Soy had no duty to inquire about the market value of the IRA funds and which contained a clear release, specifically releasing Soy from any potential claims for losses of investment in the IRAs. The circuit court did not err in dismissing the breach of fiduciary duty claim.

¶ 29                              Illinois Trusts and Trustees Act

¶ 30     Plaintiffs also argue the court erred in dismissing their claim under the Illinois Trusts and Trustees Act (760 ILCS 5/1 *et seq*. (West 2008)). Plaintiffs alleged in their first amended complaint that Soy breached its duty under section 5.1(a) of the Act not to delegate investment functions including the verification of the value of the Hubadex fund. See 760 ILCS 5/5.1(a) (West 2008). The Act only applies to trusts. 760 ILCS 5/3(2) (West 2008). "In order to find there is a valid express trust, these conditions must be present: an intent to create a trust which may be shown by a declaration of trust by the settlor or circumstances which show the settlor intended to create a trust; a definite trust *res*; ascertainable beneficiaries; a trustee; specification of the purpose of the trust and how it is to be performed; and delivery of the trust property to the trustee." *In re Estate of Davis*, 225 Ill. App. 3d 998, 1007 (1992) (citing *Gary-Wheaton Bank v. Meyer*, 130 Ill. App. 3d 87, 92 (1984), and *Yardley v. Yardley*, 137 Ill. App. 3d 747, 760 (1985)).

¶ 31     Reported precedent on the issue of whether individual retirement accounts are trusts is surprisingly sparse. The parties cite seemingly opposing authorities. Soy cites to *In re Estate of Davis*, 225 Ill. App. 3d 998, which held that a custodial IRA is not a trust. Plaintiffs cite to *Masi v. Ford City Bank & Trust Co.*, 779 F.2d 397 (7th Cir. 1985), where the United States Court of Appeals held that IRAs "are special deposits that constitute a trust relationship wherein the Bank owes a fiduciary duty to the depositor." *Masi*, 779 F.2d at 401.

¶ 32     *In re Estate of Davis* held that a custodial account IRA is not an express trust because there is no intent to establish a trust. *In re Estate of Davis*, 225 Ill. App. 3d at 1007 (citing *Estate of Davis v. Davis*, 217 Cal. Rptr. 734, 736 (Cal. Ct. App. 1985)). In *In re Estate of Davis*, the court held that under the facts of that case there was an intent to establish a trust because the IRA adoption agreement incorporated the trust agreement. *In re Estate of Davis*, 225 Ill. App. 3d at 1007. In *In re Estate of Davis*, the court explained the nature of custodial account IRAs as follows:

        "A 'custody' or 'custodial' account is a type of agency account in which the custodian has the obligation to preserve and safekeep the property entrusted to him for his principal. (Black's Law Dictionary 384 (6th ed. 1990).) Custodial accounts are treated as trusts *** are held and administered consistent with that section and if the custodial account would, except for the fact that it is not a trust, constitute an individual retirement account as described in subsection (a) of section 408. 26 U.S.C. § 408(a) (1988); *McCarty v. State Bank* (1990), 15 Kan. App. 2d 552, 555-56, 795 P.2d 940, 944." *In re Estate of Davis*, 225 Ill. App. 3d at 1006.

¶ 33     Plaintiffs raise the fact that the IRA account in *In re Estate of Davis* was discussed in the context of a property settlement agreement and judgment of dissolution of marriage.

However, this is a distinction without a difference. The issue discussed was still whether an individual retirement account is a trust.

¶ 34    Here, under the facts as alleged by plaintiffs in their amended complaint, the IRAs in this case specifically state that they are only custodial accounts. The disclosure statement specifically provided that Soy would merely be "considered" plaintiffs' "agent." The agreement between plaintiffs and Soy provided that Soy was the custodian and would allocate plaintiffs' funds as they indicated. Plaintiffs do not point to any explicit language creating a trust in any of the documents they rely upon. Further, because no trust was established, the duties under the prudent investor rule delineated in section 5 of the Trusts and Trustees Act (760 ILCS 5/5 (West 2010)) do not apply.

¶ 35    Plaintiffs rely on *Masi*, 779 F.2d 397, where the United States Court of Appeals for the Seventh Circuit held that "IRAs are not regular savings accounts. They clearly are special deposits that constitute a trust relationship wherein the Bank owes a fiduciary duty to the depositor." *Masi*, 779 F.2d at 401. In *Masi*, the custodian bank itself directly breached the IRA agreement regarding the appropriation of the plaintiff's money. The lower district court found, and neither party appealed, that the bank breached its fiduciary duties under the plaintiff's IRA agreement by using the funds in the IRA to satisfy the plaintiff's obligation under a loan. *Masi*, 779 F.2d at 399. The context in which the court made this comment was in its discussion allowing the plaintiff to prove punitive damages for the breach of fiduciary duty based on the fact that IRAs are "special deposits" constituting a "trust relationship." In making these comments, the *Masi* court quoted and relied on section 408 of the Internal Revenue Code (26 U.S.C. § 408 (2006)), which sets forth requirements for an IRA to qualify as a trust for certain tax treatment. See *Masi*, 779 F.2d at 400. The context of the court's comment regarding an IRA as a trust is then as follows:

"This section establishes seven requirements for inclusion in the trust instrument before it can qualify as an IRA trust, including that the 'interest of an individual in the balance of his account is nonforfeitable.' 26 U.S.C. § 408(a)(4). The clarity of this language is convincing, if not compelling. One must recognize that IRAs are not regular savings accounts. They clearly are special deposits that constitute a trust relationship wherein the Bank owes a fiduciary duty to the depositor." *Masi*, 779 F.2d at 400-01.

Thus, the Seventh Circuit in *Masi* was specifically discussing section 408 of the Internal Revenue Code in stating that individual retirement accounts are trusts.

¶ 36    Section 408(a) of the Internal Revenue Code provides:

"(a) Individual retirement account.

*For purposes of this section*, the term 'individual retirement account' means a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries, but only if the written governing instrument creating the trust meets the following requirements ***." (Emphasis added.) 26 U.S.C. § 408(a).

¶ 37    Although they rely exclusively on *Masi* for their assertion that individual retirement accounts are trusts, plaintiffs do not address section 408 of the Internal Revenue Code. In fact, federal courts have held that there is no cause of action against a custodian of IRAs on the basis of Internal Revenue Code section 408's reference to IRA's as "trusts." In

-10-

*Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226 (D. Colo. 2011), the United States District Court in Colorado held that there was no federal common law claim for IRAs based on section 408 of the Internal Revenue Code. In *Mandelbaum*, the IRA agreements specifically incorporated by reference section 408 of the Internal Revenue Code. Similar to the plaintiffs in the instant case, the plaintiffs in *Mandelbaum* asserted claims against the defendants for breach of contract, ordinary and gross negligence, breach of fiduciary duty, aiding and abetting breach of fiduciary duty under federal law, and unjust enrichment and restitution, although under federal common law instead of state common law. *Mandelbaum*, 787 F. Supp. 2d at 1236. The federal court granted the defendants' motion to dismiss all claims. *Mandelbaum*, 787 F. Supp. 2d at 1231. In reaching its decision, one of the cases relied on by the *Mandelbaum* federal court was *Sirna v. Prudential Securities, Inc.*, No. 95 CIV. 8422, 1997 WL 53194 (S.D.N.Y. 1997) (mem. op.) (unpublished), which held:

> " '[S]ection 408 of the Code does no more than establish a framework whereby individuals may obtain favorable tax treatment [for their retirement savings],' and 'there is nothing in the wording or effect of the statute to suggest that Congress intended to create, via the tax code, a private right of action against errant fiduciaries.' " *Mandelbaum*, 787 F. Supp. 2d at 1237 (quoting *Sirna*, 1997 WL 53194, at *3).

The court held that even the incorporation by reference of section 408 of the Internal Revenue Code into the underlying IRA agreements did not create any federal common law claims. *Mandelbaum*, 787 F. Supp. 2d at 1238. The court also held that the underlying IRA agreements for the plaintiffs' IRA custodial accounts specifically exculpated the defendants from any fiduciary duty to investors. *Mandelbaum*, 787 F. Supp. 2d at 1237-38. Thus, section 408 of the Internal Revenue Code, which was the basis of the *Masi* court's comments that IRAs are trusts, does not create any cause of action against IRA custodian banks.

¶ 38    However, even if the IRAs established here are considered trusts, the Trusts and Trustees Act provides an exception that "[a] person establishing a trust may specify in the instrument the rights, powers, duties, limitations and immunities applicable to the trustee, beneficiary and others and those provisions where not otherwise contrary to law shall control, notwithstanding this Act." 760 ILCS 5/3(1) (West 2008). The provision on the prudent investor rule in the Trusts and Trustees Act also provides: "The provisions of this Section may be expanded, restricted, eliminated, or otherwise altered by express provisions of the trust instrument." 760 ILCS 5/5(b) (West 2008).

¶ 39    Section 8.11 of the financial disclosure specifically exculpated Soy from any liability in providing that Soy was "not responsible for directing [plaintiffs'] investments, or providing investment advice, including guidance on the suitability or potential market value of various investments." Plaintiffs also agreed in their applications that they release and would hold Soy harmless from any losses as a result of their investment directions. Thus, even within the ambit of the Trusts and Trustees Act, the exculpatory release provisions control and Soy cannot be held liable.

¶ 40    Plaintiffs argue against the application of these clear exculpatory provisions but do not argue that their amended complaint sufficiently alleged that the provisions are "otherwise contrary to law" such that they should not control. See 760 ILCS 5/5(1) (West 2008). The

circuit court did not err in dismissing the claim under the Truss and Trustees Act with prejudice.

¶ 41                                    Professional Negligence

¶ 42    Plaintiffs also maintain that they have stated a claim against Soy for professional negligence. The elements of a claim for professional negligence are: (1) the existence of a professional relationship; (2) a breach of duty arising from the relationship; (3) causation; and (4) damage. *MC Baldwin Financial Co. v. DiMaggio, Rosario & Veraja, LLC*, 364 Ill. App. 3d 6, 14 (2006) (citing *Belden v. Emmerman*, 203 Ill. App. 3d 265, 268 (1990)).

¶ 43    Plaintiffs are very far afield in attempting to allege a claim for professional negligence under the facts of this case. A bank is not a "professional," and thus there is no "professional relationship." Plaintiffs provide no authority establishing that a claim for professional negligence can be maintained against a bank. The circuit court appropriately dismissed this claim with prejudice.


¶ 44            Consumer Fraud and Deceptive Business Practices Act

¶ 45    Plaintiffs also claim the circuit court erred in dismissing their claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq*. (West 2008)). The unfair or deceptive practices provision provides the following:

> "§ 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 ILCS 510/2], approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 2008).

¶ 46    "Generally, to establish a violation of the Consumer Fraud Act, plaintiffs must establish that (1) defendant committed a deceptive act, such as the misrepresentation or concealment of a material fact; (2) defendant intended to induce plaintiffs' reliance on the deception; and (3) the deception occurred in a course of conduct involving trade or commerce." *Brody v. Finch University of Health Sciences/The Chicago Medical School*, 298 Ill. App. 3d 146, 157 (1998) (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996), citing *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 542 (1992)).

¶ 47    Here, plaintiffs fail to sufficiently allege the elements necessary to sustain a claim for violation of the Consumer Fraud and Deceptive Business Practices Act. In their brief, plaintiffs rely solely upon the account statements in arguing that they have stated a claim for a deceptive and/or unfair trade practice. Plaintiffs alleged in their amended complaint that "Soy made these statements with the intention of keeping Plaintiffs' accounts, and to continue to charge Plaintiffs administrative, custodial, trustee and fiduciary fees." However,

according to the exhibits attached to and incorporated into plaintiffs' amended complaint, Soy merely provided the financial information that Hubadex reported. Pursuant to the parties' express agreement in the disclosure statement, Soy had "no duty to inquire about or investigate such information." Thus, plaintiffs have essentially pled themselves out of court by attaching these agreements to their amended complaint.

¶ 48                                     Breach of Contract

¶ 49        Plaintiffs argue that the court also erred in dismissing their breach of contract claim. In order to maintain a cause of action for breach of contract, plaintiffs must allege "the existence of a contract, performance of all conditions to be performed by the plaintiff, breach by the defendant, and damages to plaintiff as a consequence thereof." *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 352 (2000). Plaintiffs alleged in their first amended complaint that they performed all their duties under the agreement with Soy in paying Soy for its services, but that "Soy has failed to fulfill its duty and obligations undertaken in its 'Fee Schedule', namely that of custody and safekeeping of securities."

¶ 50        However, plaintiffs have failed to allege the breach of any duty by Soy. The agreement established a duty that Soy would apply plaintiffs' investment funds as plaintiffs directed, and under the allegations in the first amended complaint Soy fulfilled its duty in making the requested transfers as directed by plaintiffs. Again, plaintiffs explicitly agreed to release and hold Soy harmless from any losses resulting from their direction of investment in the IRAs created. The circuit court did not err in dismissing plaintiffs' claim for breach of contract, as there is no way plaintiffs can establish such a claim under the facts alleged, which includes the agreement comprised of all the disclosures.

¶ 51                                     Civil Conspiracy

¶ 52        Plaintiffs argue that they have stated a cause of action for civil conspiracy against Soy. Civil conspiracy is defined as " 'a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means.' " *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999) (quoting *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 23 (1998)). In order to state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement. *McClure*, 188 Ill. 2d at 133 (citing *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62-64 (1994)). The agreement is "a necessary and important" element of this cause of action. *McClure*, 188 Ill. 2d at 133 (citing *Adcock*, 164 Ill. 2d at 62). Civil conspiracy is an intentional tort and requires proof that a defendant "knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner." *McClure*, 188 Ill. 2d at 133 (citing *Adcock*, 164 Ill. 2d at 64).

¶ 53        Plaintiffs' complaint fails to state a cause of action for civil conspiracy, as plaintiffs do not allege any agreement between Soy and Hubadex. In fact, plaintiffs' allegations that Soy had "concerns" about Hubadex and considered eliminating its Hubadex IRAs belies any inference that there was any agreement between Soy and Hubadex to accomplish an unlawful purpose.

¶ 54      Also, plaintiffs' first amended complaint fails to set forth a tortious act by Soy. The documents attached to the amended complaint constituting the agreement with plaintiffs gave plaintiffs notice and bound them to a release of any claim for their losses. Even taking all the allegations in plaintiffs' amended complaint as true, there is no tortious act by Soy. The circuit court did not err in dismissing plaintiffs' civil conspiracy count for failure to state a claim.

¶ 55                                       Bailment

¶ 56      Plaintiffs plead in the alternative and argue that their amended complaint stated a cause of action for breach of duty under a bailment because IRAs are special deposits and constitute bailments. "In order to recover under a bailment theory, the plaintiff must allege: (1) an express or implied agreement to create a bailment; (2) delivery of the property in good condition; (3) the bailee's acceptance of the property; and (4) the bailee's failure to return the property or the bailee's redelivery of the property in a damaged condition." *American Ambassador Casualty Co. v. Jackson*, 295 Ill. App. 3d 485, 490 (1998) (citing *American Ambassador Casualty Co. v. City of Chicago*, 205 Ill. App. 3d 879, 881 (1990)).

¶ 57      However, as Soy points out, the relation here between plaintiffs and Soy is governed by contract. When a bailment is created by an express contract the terms of the contract, either increasing or diminishing the parties' rights, control. *Insurance Co. of North America v. Elgin, Joliet & Eastern Ry. Co.*, 229 F.2d 705, 712 (7th Cir. 1956). The contract here contained no promise to return plaintiffs' investments in their original amount. See *Mid-City National Bank of Chicago v. Mar Building Corp.*, 33 Ill. App. 3d 1083, 1090 (1975) (" 'The petition in this case does not aver that the identical money deposited was to be kept and paid over \*\*\*. We think this averment fails to fasten on the money deposited the distinctive feature of "special deposit" or bailment.' " (quoting *Mississippi Central R.R. Co. v. Conner*, 75 So. 57, 58 (Miss. 1917))).

¶ 58      Plaintiffs also argue that Soy breached its duty under a bailment because there was a "special relationship" which "created a duty on Soy [*sic*] to warn Plaintiffs of the risks involved in investing in an unaudited account, as well as a duty to warn Plaintiffs of its concerns about Hubadex and its considerations of eliminating its Hubadex IRA accounts," citing *Iseberg v. Gross*, 227 Ill. 2d 78 (2007). However, *Iseberg* does not stand for this proposition and is not on point. *Iseberg* dealt with the duty to warn an agent of an unreasonable risk of harm in employment in a principal/agent relationship, and in fact held that the defendants did not have any duty to warn. *Iseberg*, 227 Ill. 2d at 91. In *Iseberg*, plaintiff and his wife filed an action against the defendants, claiming they were negligent because they failed to ward Iseberg that a former mutual business partner had made threats against Iseberg's life. *Iseberg*, 227 Ill. 2d at 80. The former partner later shot Iseberg, rendering him a paraplegic. *Id.* Plaintiffs' complaint was dismissed and the plaintiffs contended on appeal that the defendants owed them a duty to warn because of an agency relationship with plaintiffs. *Id.* at 88-89. Our supreme court held that the facts contradicted any agency relationship and that there was no duty to warn because the unreasonable risk of harm was not involved in the employment. *Id.* at 91-92. *Iseberg* is not on point and does not

support plaintiffs' argument that there was any breach of duty under a bailment.

¶ 59 Plaintiffs cite no other authority for their broad-sweeping proposition that under a bailment Soy had a duty to warn plaintiffs of the risks in investing in an unaudited account and its concerns about Hubadex. The plaintiffs' first amended complaint fails to state a claim for breach of any duty under a bailment, and thus the court properly dismissed this claim.

¶ 60                                    Wilful and Wanton Misconduct

¶ 61 Plaintiff further maintain that they have stated a cause of action for wilful and wanton misconduct. Plaintiffs argue that Soy had a conscious disregard for plaintiffs and their retirement investment in failing to ascertain the true value of the funds in plaintiffs' accounts and in making false statements of material fact to induce plaintiffs to remain in the funds. In order to state a claim for willful and wanton misconduct, there must be allegations that a defendant breached some duty with a particularly malicious intent. *OnTap Premium Quality Waters, Inc. v. Bank of Northern Illinois, N.A.*, 262 Ill. App. 3d 254, 261 (1994). Plaintiffs have failed to allege the breach of any duty by Soy. The agreement established a duty that Soy would apply plaintiffs' investment funds as plaintiffs directed, and Soy fulfilled its duty in making the requested transfers as directed by plaintiffs. Any other duties alleged by plaintiffs were explicitly negated in the agreement and the release contained in the agreement. The circuit court therefore properly dismissed this final claim as well.

¶ 62                                            CONCLUSION

¶ 63 The circuit court did not err in dismissing the plaintiffs' amended complaint for failure to state a cause of action on all counts in plaintiffs' first amended complaint for: breach of fiduciary duty; breach of the Illinois Trusts and Trustees Act; professional negligence; breach of the Illinois Consumer Fraud and Deceptive Business Practices Act; breach of contract; civil conspiracy; breach of duty under a bailment; and wilful and wanton misconduct. Here, the IRA agreement signed by plaintiffs, which encompassed the disclosures, specifically provided that the defendant custodian bank had no duty to investigate the actual value of the funds and plaintiffs agreed to release and hold the bank harmless from any losses as a result of their direction of investment in the IRAs. These provisions are dispositive and negate the requisite elements under each of the above claims.

¶ 64 Affirmed.