2023 IL App (4th) 220409
NO. 4-22-0409
IN THE APPELLATE COURT
OF ILLINOIS
FOURTH DISTRICT

FILED
May 30, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| PROFESSIONAL SOLUTIONS INSURANCE COMPANY, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant, | ) | Rock Island County |
| v. | ) | No. 21MR818 |
| VENKATESWARA R. KARUPARTHY, M.D.; | ) | |
| INTEGRATIVE PAIN CENTERS OF AMERICA, | ) | |
| LTD.; and NANCY CORELIS, | ) | Honorable |
| Defendants-Appellees. | ) | Kathleen E. Mesich, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justice Zenoff concurred in the judgment and opinion.
Justice Harris dissented, with opinion.

**OPINION**

¶ 1 In August 2020, Nancy Corelis filed a complaint against Venkateswara R. Karuparthy, M.D., and Integrative Pain Centers of America, Ltd. (collectively, the medical defendants), alleging Karuparthy (1) injected a "medical substance" that rendered her immobile and (2) subsequently "repeatedly and intentionally touched, grabbed, fondled, and kissed [Corelis's] person." Corelis also alleged Karuparthy negligently injected her with a substance that rendered her immobile and caused her physical and emotional injuries. Corelis alleged Integrative Pain Centers of America, Ltd. (Integrative Pain Centers) was vicariously liable.

¶ 2 In October 2021, plaintiff, Professional Solutions Insurance Company (Professional Solutions) filed a declaratory judgment action against the medical defendants and Corelis in which it sought a declaration that it had no duty to defend the underlying action because

Karuparthy pleaded guilty to two criminal charges arising out of Karuparthy's conduct as alleged in Corelis's complaint. Specifically, Professional Solutions argued that based on the guilty pleas, the underlying complaint alleged only intentional conduct or actions that otherwise did not qualify as professional services under the policy. Alternatively, the allegations fell under several exclusions, including criminal conduct, intentional conduct, and sexual misconduct.

¶ 3        In November 2021, Corelis filed a motion to dismiss the declaratory judgment action pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2020)), arguing the underlying complaint sufficiently pleaded a claim for medical negligence that brought the allegations potentially within coverage under the policy. In response, Professional Solutions filed a "cross-motion" for judgment on the pleadings. After the parties fully briefed the motions, the trial court concluded that Professional Solutions had a duty to defend the underlying complaint, granted Corelis's motion to dismiss, and denied Professional Solutions' motion for judgment on the pleadings.

¶ 4        Professional Solutions appeals, arguing the trial court erred when it found Professional Solutions had a duty to defend Karuparthy. Professional Solutions contends that Karuparthy's convictions for crimes arising out of the same transaction or occurrence as the underlying complaint (1) removed the allegations in the underlying complaint from the policy's coverage, (2) triggered the policy's criminal acts exclusion, and (3) made a *prima facie* showing that the criminal acts exclusion or other exclusions applied. We agree with Professional Solutions, reverse the trial court's judgment, and remand with directions.

¶ 5                                I. BACKGROUND

¶ 6                            A. The Underlying Action

¶ 7                                1. *The Complaint*

¶ 8         In August 2020, Corelis filed a complaint against the medical defendants (hereinafter referred to as the underlying complaint). The underlying complaint alleged six counts: battery (count I), assault (count II), intentional infliction of emotional distress (count III), false imprisonment (count IV), negligence against Karuparthy (count V), and negligence against Integrative Pain Centers based on its vicarious liability for Karuparthy's acts (count VI).

¶ 9         Counts I, II, and III alleged the following. On August 23, 2018, Corelis "received medical treatment from [Karuparthy]." "During that medical treatment, [Karuparthy] injected [Corelis] with a medical substance." "Unbeknownst to [Corelis], that injection impaired/limited her ability to move." "While [Corelis was] under the effects of that medication, [Karuparthy] repeatedly and intentionally touched, grabbed, fondled, and kissed [Corelis's] person." The complaint also alleged that (1) the touchings were unwanted, offensive, harmful, placed Corelis in further apprehension of harm—including rape—and (2) she suffered damages and emotional distress.

¶ 10         Count IV asserted a claim for false imprisonment and contained the same allegations with some changes. Count IV alleged that when Corelis received medical treatment in the form of an injection from Karuparthy on August 23, 2018, "[u]nbeknownst to [Corelis], that injection *constrained*, impaired, and/or limited her ability to move." (Emphasis added.) Count IV then alleged, "That injection and the effects of same constituted a restraint on her freedom and her ability to leave the room while [Karuparthy] repeatedly touched, grabbed, fondled, and kissed [Corelis's] person, all of which was unwanted."

¶ 11         Count V contained identical allegations as count IV regarding (1) the treatment, (2) the injection, and (3) unknown to Corelis, the injection "constrained, impaired, and/or limited her ability to move." Count V additionally asserted Karuparthy owed Corelis a duty of care and

that "he committed one or more or a combination of all of the following negligent acts or omissions." Count V alleged the following acts of negligence:

"a. Failed to obtain informed consent prior to administering a medical substance that impaired and/or constrained her ability to move;

b. Failed to explain the side effects of the medical substance prior to administering same;

c. Failed to conduct a proper clinical examination prior to administering the injection in question; and

d. Failed to make a diagnosis prior to administering the medical substance in question."

Count V then alleged that "[a]s a direct and proximate result" of the above negligent acts or omissions, Karuparthy "injected [Corelis] with a substance, rendering her temporarily immobile." Count V concluded by alleging that "[a]s a direct and proximate result of that immobility," Corelis required medical treatment, suffered substantial pain and discomfort, experienced a loss of a normal life, and suffered emotional distress.

¶ 12      Count VI contained the same allegations as count V but asserted Integrative Pain Centers was liable for the acts of Karuparthy, who was acting as an actual or apparent agent or employee of Integrative Pain Centers.

¶ 13      2. *The Section 2-622 Affidavit and Physician's Report*

¶ 14      Corelis attached to her complaint a section 2-622 affidavit (735 ILCS 5/2-622 (West 2020)) and physician's report explaining why the physician believed the lawsuit was meritorious. The report stated that it was based on Corelis's medical records from Integrative Pain Centers and explained that "[o]n August 23, 2018, Nancy Corelis was alleged to receive an

- 4 -

unscheduled administration of intravenous B-Complex vitamins. Though, in addition to the intravenous vitamins, Dr. Karuparthy administered a thumb joint injection and intravenous ketamine."

¶ 15        Regarding the thumb injection, the physician's report stated that "according to his notes," Karuparthy examined the thumb, noted arthritic changes, and gave a steroid injection to the joint. "Based on records from prior office visits," the injection was a breach of the standard of care because (1) Corelis had no history of arthritis, (2) Karuparthy did not take an X-ray or rule out other causes, and (3) "he failed to obtain consent for the thumb injection."

¶ 16        Regarding the administration of ketamine, the physician's report stated that a thumb joint injection was an inappropriate circumstance to administer ketamine. Accordingly, Karuparthy breached the standard of care by (1) administering the injection and (2) "fail[ing] to obtain consent for the use of ketamine." The report further stated that Karuparthy breached the standard of care based on the manner in which he administered the ketamine and actions he took after giving it. Karuparthy breached the standard of care by not determining how long it had been since Corelis had anything to eat or drink. Further, "[o]n this visit, unlike other visits, Dr. Karuparthy used a bolus to administer ketamine. A reasonably careful anesthesiologist should recognize that a patient can react differently to the manner in which ketamine is administered. According to his own notes, Dr. Karuparthy failed to do so. He left the room, leaving Nancy Corelis unattended while under the effects of ketamine, breaching the standard of care." The report continued:

> "When he returned, Nancy Corelis was hemodynamically compromised. Yet he left the room again to obtain the oxygen tank and oxygen mask, breaching the standard of care. If administering ketamine, the standard of care requires not

only that the patient be fully monitored, with a qualified person in constant attendance, but also complete resuscitation capabilities available in the patient's room, not a different room, which breaches the standard of care."

¶ 17     The report concluded that "there [wa]s a reasonable basis for a cause of action against" Karuparthy because he "mismanaged the care and treatment of Nancy Corelis, including multiple deviations of the standard of care." However, the report did not identify any injury suffered by Corelis (other than a lack of consent) or how any of the deviations of the standard of care caused any injury.

¶ 18                    B. The Declaratory Judgment Complaint

¶ 19     In October 2021, Professional Solutions filed a complaint for a declaratory judgment against Karuparthy, Integrative Pain Centers, and Corelis. The complaint asserted that Professional Solutions had issued a medical professional liability insurance policy to Integrative Pain Centers as the insured. That policy also listed Karuparthy as a named insured. The complaint further asserted that Professional Solutions was notified of the underlying lawsuit and in August 2020 agreed to defend the suit under a reservation of rights. Copies of the policy and underlying complaint were attached to the declaratory judgment complaint.

¶ 20     The declaratory judgment complaint further alleged the following:

"On December 19, 2018, a criminal complaint was filed against Dr. Karuparthy in *** case no. 2018CF1120 (the 'Criminal Case'). The Criminal Case is based on the same events which gave rise to the Corelis Lawsuit.

On July 23, 2021, an Order of Probation was entered in connection with the Criminal Case. Dr. Karuparthy pled guilty to the offenses of Reckless Conduct and Assault and was sentenced to a term of probation of 12 months. A true and accurate

copy of the entered Order of Probation is attached hereto as Exhibit 3."

¶ 21     The declaratory judgment complaint highlighted the definitions of "Incident" and "Professional Services" contained in the policy. "Incident means any negligent omission, act or error in rendering or failure to render Professional Services. Injury caused by a single act, error or omission or a series of related acts, errors or omissions shall be considered one Incident." "Professional Services means the diagnosis of, treatment or medical care for or medical consultation regarding a patient's medical condition."

¶ 22     In its complaint, Professional Solutions contended that it did not owe a duty to defend the underlying complaint because (1) the underlying complaint alleged intentional conduct by Karuparthy that did not constitute an "incident" under the policy, (2) the allegations that Karuparthy touched, grabbed, kissed, and fondled Corelis were not "professional services," (3) Karuparthy pleaded guilty to reckless conduct and assault based on the same acts alleged in the underlying complaint and the policy excluded coverage for "Damages, Claims or Suits arising out of, based upon, or attributable to … [a]n act or omission violating any federal or state statute, or any county or municipal ordinance governing the commission of a crime," and (4) various other exclusions—namely, intentional acts, sexual misconduct, and false imprisonment exclusions—barred coverage.

¶ 23     C. The Subsequent Pleadings and Motions

¶ 24     In November 2021, the medical defendants filed an answer to the declaratory judgment complaint in which they admitted that (1) "a criminal complaint was filed, but claim[ed] that the Criminal Case arose out of the same transaction or occurrence that gave rise to the Corelis lawsuit, rather than [being] 'based on the same events which gave rise to the Corelis lawsuit,' " and (2) Karuparthy pleaded guilty to reckless conduct and assault in the criminal case. The medical

defendants denied Professional Solutions' allegations that it did not have a duty to defend or that the exclusions applied.

¶ 25                                    1. *Corelis's Motion To Dismiss*

¶ 26        Later in November 2021, Corelis filed a motion to dismiss the declaratory judgment action pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2020)), asserting that (1) Professional Solutions did not attach a copy of the section 2-622 physician's report, which had been attached to the underlying complaint, to the declaratory judgment action, (2) Professional Solutions "ignored" the negligence counts in the underlying complaint and those counts properly pleaded causes of action for negligence on their face, (3) the physician's report detailed Karuparthy's standard of care and how he committed professional negligence during the course of his medical treatment of Corelis, (4) "[t]he negligence claim and the physician's report are affirmative matters that defeat" the declaratory judgment action and "require the duty to defend," and (5) the exclusion provisions asserted by Professional Solutions were inapplicable.

¶ 27        2. *Professional Solutions' Motion for Judgment on the Pleadings*

¶ 28        In December 2021, the trial court conducted a hearing on Corelis's motion to dismiss and entered an agreed order. That order set a briefing schedule for (1) Professional Solutions to file a "Combined Response in Opposition to Corelis' Motion to Dismiss and Cross-Motion for Judgment on the Pleadings," (2) Corelis to file a "Combined Reply in Support of Motion to Dismiss and Response in Opposition to Plaintiff's Motion for Judgment on the Pleadings," and (3) Professional Solutions to file a reply in support of its "Cross-Motion" for judgment on the pleadings.

¶ 29        In January 2022, Professional Solutions filed a document titled "Plaintiff's Combined Response in Opposition to *** Corelis' Motion to Dismiss and Cross-Motion for

Judgment on the Pleadings" pursuant to section 2-615(e) of the Code (735 ILCS 5/2-615(e) (West 2020)).

¶ 30      Professional Solutions argued that it did not have a duty to defend because (1) the underlying complaint alleged intentional conduct that did not qualify as an "incident" or "professional services" under the policy and (2) Karuparthy's pleading guilty to crimes arising out of the same incident triggered several exclusions in the policy. Professional Solutions first explained that Karuparthy admitted in his answer to the declaratory judgment complaint that he was charged in a criminal case arising out of the same transaction or occurrence alleged in the underlying complaint. Karuparthy further admitted that he pleaded guilty to reckless conduct and assault in that criminal case. Based on these pleas, Professional Solutions contended that the allegations in the underlying complaint could be read only as asserting a cohesive scheme to commit sexual assault that did not constitute the rendering of professional services, which would otherwise be covered.

¶ 31      Professional Solutions also argued that Karuparthy's convictions triggered the criminal acts exclusion, the intentional conduct exclusion, the false imprisonment exclusion, and the sexual misconduct exclusion. Accordingly, Professional Solutions maintained it did not have a duty to defend the underlying complaint notwithstanding the counts labelled as "negligence" therein.

¶ 32                                    3. *The Responses*

¶ 33      Corelis filed a reply in support of her motion to dismiss and a separate response to Professional Solutions' motion for judgment on the pleadings. In her response to Professional Solutions' motion, Corelis argued only that a motion for judgment on the pleadings was procedurally improper because she had not yet filed an answer to the declaratory judgment

complaint.

¶ 34    In her reply in support of her motion to dismiss, Corelis addressed the merits of Professional Solutions' arguments. Corelis argued that her motion to dismiss was proper because the section 2-622 report and negligence claim constituted other matters that defeated the declaratory judgment complaint. Corelis further argued that the criminal convictions did not collaterally estop her from asserting a negligence claim because (1) the issues in the criminal case and underlying complaint were not identical and (2) it would be unfair to hold those convictions against her.

¶ 35    Corelis next contended that the intentional conduct alleged was the unwanted touching, which was separate from the injection. She maintained that the injection was not alleged to be intentional conduct and instead showed that she received medical treatment under the terms of the insurance policy. In support of this argument, Corelis relied on a medical record from Karuparthy that she did not attach to her reply and said she would make available to the trial court for *in camera* inspection. Corelis asserted that she was permitted to plead in the alternative and the negligence claims focused on medical treatment and breaches of the standard of care such as lack of informed consent.

¶ 36    In Professional Solutions' response, it argued that reliance on any medical record was inappropriate because it was not part of the pleadings. Professional Solutions also argued that the immobilizing injection was an integral part of, and could not be separated from, the intentional touching regardless of whether Corelis left the unwanted touching allegations out of the negligence counts because the counts clearly described a single course of conduct. As a result, the allegations in the underlying complaint could not be considered related to medical treatment where those allegations pertained to sexual misconduct.

¶ 37                                    D. The Trial Court's Ruling

¶ 38        In March 2022, the trial court conducted a hearing, which it stated was "on Corelis's motion to dismiss and Professional Solutions motion for judgment on the pleadings." The parties raised various arguments consistent with their briefs. When asked if Professional Solutions wished to make separate arguments on its motion for judgment on the pleadings, Professional Solutions declined, stating it believed the "motions are really companion" and it had nothing to add in addition to the arguments it had already made.

¶ 39        In April 2022, the trial court entered a written order granting Corelis's motion to dismiss and denying Professional Solutions' motion for judgment on the pleadings. The court found that the underlying complaint made allegations that stated claims for negligence that potentially fell within the policy's coverage. Accordingly, the court found that Professional Solutions had a duty to defend. The court rejected Professional Solutions' arguments that exclusions applied because "a criminal conviction is only *prima facie*, not conclusive evidence of an insured's intent." The court concluded that "Karuparthy's guilty plea does not, by itself, establish intentional conduct as a matter of law."

¶ 40        This appeal followed.

¶ 41                                            II. ANALYSIS

¶ 42        Professional Solutions appeals, arguing the trial court erred when it found Professional Solutions had a duty to defend Karuparthy. Professional Solutions contends that Karuparthy's convictions for crimes arising out of the same transaction or occurrence as the underlying complaint (1) removed the allegations in the underlying complaint from the policy's coverage, (2) triggered the policy's criminal acts exclusion, and (3) made a *prima facie* showing that the criminal acts exclusion or other exclusions applied. We agree with Professional Solutions,

- 11 -

reverse the trial court's judgment, and remand with directions.

¶ 43                 A. The Applicable Law and the Standard of Review

¶ 44                   1. *Motions for Judgment on the Pleadings*

¶ 45       "A motion for judgment on the pleadings is like a motion for summary judgment, limited to the pleadings." *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455, 930 N.E.2d 1011, 1016 (2010); *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 52, 129 N.E.3d 1181 ("A motion for judgment on the pleadings *** is essentially a motion for summary judgment that is limited to the pleadings."). "Thus, judgment on the pleadings is proper ' "[i]f the admissions in the pleadings disclose that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." ' " *Hartford Insurance Co. of Illinois v. Kelly*, 309 Ill. App. 3d 800, 804, 723 N.E.2d 288, 291 (1999) (quoting *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 138, 708 N.E.2d 1122, 1129 (1999), quoting 3 Richard A. Michael, Illinois Practice, Civil Procedure Before Trial § 27.2, at 494 (1989)). "In ruling on a motion for judgment on the pleadings, a court may consider only those facts appearing on the face of the pleadings, matters subject to judicial notice, and any judicial admissions in the record." *Hooker v. Illinois State Board of Elections*, 2016 IL 121077, ¶ 21, 63 N.E.3d 824. "For purposes of resolving the motion, the court must consider as admitted all well-pleaded facts set forth in the pleadings of the nonmoving party, and the fair inferences drawn therefrom." (Internal quotation marks omitted.) *Wilson*, 237 Ill. 2d at 455.

¶ 46                      2. *The Duty To Defend*

¶ 47       "In a declaratory judgment action in which the issue is whether the insurer has a duty to defend, courts first look to the allegations in the underlying complaint and compare those allegations to the relevant provisions of the insurance contract." *Illinois State Bar Ass'n Mutual*

*Insurance Co. v. Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 35, 103 N.E.3d 1087. "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Wilson*, 237 Ill. 2d at 455. "This is true even if the allegations are groundless, false, or fraudulent, and even if only one of several theories of recovery alleged in the complaint falls within the potential coverage of the policy." *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363, 860 N.E.2d 307, 315 (2006).

¶ 48 The allegations in the underlying complaint are construed liberally and are not required to be in any particular form. *Empire Indemnity Insurance Co. v. Chicago Province of the Society of Jesus*, 2013 IL App (1st) 112346, ¶ 35, 990 N.E.2d 845. "[T]he question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action." (Internal quotation marks omitted.) *Wilson*, 237 Ill. 2d at 460.

¶ 49 "Little weight is given to the legal label that characterizes the allegations of the underlying complaint; rather, the determination focuses on whether the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy." *Illinois State Bar Ass'n Mutual Insurance Co. v. Mondo*, 392 Ill. App. 3d 1032, 1037, 911 N.E.2d 1144, 1149 (2009); see also *Pekin Insurance Co. v. Dial*, 355 Ill. App. 3d 516, 520, 823 N.E.2d 986, 990 (2005) ("The factual allegations of the complaint, rather than the legal theory under which the action is brought, determine whether there is a duty to defend."). "On the other hand, we have not been blind to the fact that plaintiffs may have an incentive to draft pleadings in a way that triggers the defendant's insurance coverage." *Country Mutual Insurance Co. v. Dahms*, 2016 IL App (1st) 141392, ¶ 47, 58 N.E.3d 118. "Even where a complaint alleges an act is 'negligent,' if the allegations show that what is truly alleged can only be characterized as an intentional act, the substance will control over the moniker placed on it by a plaintiff." *Id.* (citing *Lexmark International, Inc. v. Transportation*

*Insurance Co.*, 327 Ill. App. 3d 128, 135-36, 761 N.E.2d 1214, 1221 (2001)). "The complaint must be read as a whole to assess its true nature." *Owners Insurance Co. v. Don McCue Chevrolet, Inc.*, 2022 IL App (2d) 210634, ¶ 19.

¶ 50 In *Farmers Automobile Insurance Ass'n v. Danner*, 2012 IL App (4th) 110461, ¶ 37, 967 N.E.2d 836, this court explained the inquiry and wrote the following:

> "[I]n determining whether an insurance company has a duty to defend, courts are *not* required ' "to consider each count in isolation and ignore facts pleaded in other counts," ' where the plaintiff has pleaded separate counts against various defendants but not pleaded in the alternative. *SCR Medical Transportation Services, Inc. v. Browne*, 335 Ill. App. 3d 585, 590, 781 N.E.2d 564, 569 (2002) (quoting *Illinois Casualty Co. v. Turpen*, 84 Ill. App. 3d 288, 293, 405 N.E.2d 4, 7 (1980)). In *Lexmark International, Inc. v. Transportation Insurance Co.*, 327 Ill. App. 3d 128, 136-37, 761 N.E.2d 1214, 1222 (2001), the First District considered all of the facts alleged in two separate complaints in a single analysis of the insurer's duty to defend and 'perform[ed] a textual exegesis on the complaints to determine whether their factual allegations trigger[ed] the insurance companies' duty to defend.' " (Emphasis in original.)

¶ 51 This court has repeatedly rejected a plaintiff's " 'transparent attempt to trigger insurance coverage.' " *Danner*, 2012 IL App (4th) 110461, ¶ 40 (quoting *Dial*, 355 Ill. App. 3d at 522); see also *Allstate Indemnity Co. v. Contreras*, 2018 IL App (2d) 170964, ¶ 22, 1099 N.E.3d 894 (same); *American Family Mutual Insurance Co. v. Guzik*, 406 Ill. App. 3d 245, 248, 941 N.E.2d 936, 940 (2010) (same); *State Farm Fire & Casualty Co. v. Watters*, 268 Ill. App. 3d 501, 510, 644 N.E.2d 492, 498 (1994) (same).

¶ 52                              3. *Construction of the Policy*

¶ 53          "The primary objective when construing the language of an insurance policy is to ascertain and enforce the intentions of the parties as expressed in their agreement." *Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 40. If the terms of the policy are clear and unambiguous, they are given their plain and ordinary meaning. *Id.*; *Wilson*, 237 Ill. 2d at 455-56. Any ambiguities or provisions that limit or exclude coverage are construed strictly against the insurer who drafted the policy and liberally in favor of the insured. *Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 40. "A court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." (Internal quotation marks omitted.) *Wilson*, 237 Ill. 2d at 456.

¶ 54          "If an insurer relies on an exclusionary clause to deny coverage, it must be clear and free from doubt that the exclusionary clause applies." *Leighton Legal Group, LLC*, 2018 IL App (4th) 170548, ¶ 37. "This is so because there is little or no bargaining involved in the insurance contracting process [citation], the insurer has control in the drafting process, and the policy's overall purpose is to provide coverage to the insured." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 119, 607 N.E.2d 1204, 1217 (1992).

¶ 55                              4. *The Standard of Review*

¶ 56          A trial court's entry of judgment on the pleadings is reviewed *de novo*. *Hooker*, 2016 IL 121077, ¶ 21. Similarly, construction of an insurance policy presents a question of law that an appellate court reviews *de novo*. *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 30, 183 N.E.3d 47.

¶ 57                              B. This Case

¶ 58          1. *The Allegations in the Complaint Fall Outside the Policy's Coverage*

¶ 59          Notwithstanding their assertions to the contrary, Corelis and the medical defendants essentially ask this court to elevate legal labels over the substance of the factual allegations in the underlying complaint, thereby permitting plaintiffs to manufacture coverage through clever lawyering, careful wording, and sophisticated pleading, all calculated to neatly comply with black-letter law and legal rules in a purely abstract, hyper-technical sense while ignoring reality and common sense. We emphatically reject these arguments and clarify the standards for determining whether a complaint invokes a duty to defend.

¶ 60          It is well settled that the substance of the factual allegations of the underlying complaint—not the legal labels attached thereto—determines whether a claim falls potentially within coverage. *Dial*, 355 Ill. App. 3d at 520. This well-known maxim is frequently employed with respect to motions; the substance of the motion, and not its title, controls. *County of Tazwell ex rel. Hranka v. Zimmerman*, 2021 IL App (3d) 200315, ¶ 12, 193 N.E.3d 1270. Both of these foundational principles are predicated on notions of fairness and equity. Movants cannot avoid the rules of procedure by merely labeling a motion in a particular fashion or citing a particular statute. Similarly, clever lawyering and skilled drafting cannot create insurance coverage. *Danner*, 2012 IL App (4th) 110461, ¶ 32. Courts are well aware that litigants have a great incentive to draft pleadings so as to bring claims within an insurance policy's coverage. *Dahms*, 2016 IL App (1st) 141392, ¶ 47.

¶ 61          Here, Corelis's negligence counts amount to little more than a groundless attempt to bring her claims within the policy's coverage. Any lay person reading the allegations of the underlying complaint as a whole would easily understand that Corelis seeks to recover for injuries resulting from a single course of conduct—namely, Karuparthy's sexual misconduct under the guise of medical treatment. Any argument to the contrary defies common sense.

¶ 62    All of Corelis's claims revolve around Karuparthy's injection of a "medical substance" that rendered her immobile against her will. Clearly, the purpose of the injection was to render Corelis immobile so that Karuparthy could engage in sexual misconduct with her. The injection was an integral part of an intentional plan to commit a criminal act, lacking a legitimate medical purpose.

¶ 63    Karuparthy did not merely fail to obtain informed consent; he did not obtain any consent at all. His failure to disclose that the substance was ketamine and that it would render Corelis immobile was a feature, not a bug. Of course Karuparthy made no attempt to comply with the standard of care; he was intentionally violating it.

¶ 64    Corelis insists that her intentional tort counts are predicated not on the injection but on Karuparthy's sexual assault that followed. Corelis asks this court to believe that the negligence counts, containing the same core allegations but carefully omitting any sexual misconduct, are wholly independent and separate from the intentional torts, pleaded in the alternative, asserting injuries related only to the immobilizing injection. The latter counts, Corelis professes, seek recovery for errors committed during the course of legitimate medical treatment. Corelis claims that (1) the sexual misconduct was not guaranteed to occur after Karuparthy's supposed negligence rendered her immobile and (2) her injuries from having been rendered immobile would have occurred regardless of whether Karuparthy subsequently assaulted her.

¶ 65    In essence, Corelis attempts to convince this court that Karuparthy's assault was a crime of opportunity, conveniently presented after he negligently—but innocently—administered ketamine in a manner sure to immobilize her after he just happened to forget to obtain her consent. We disagree and conclude that the substance of Corelis's complaint—what she is actually suing over—is Karuparthy's immobilizing her without her knowledge and consent only to subsequently

touch, grab, fondle, and kiss her.

¶ 66 Courts have long recognized the obvious: a doctor's sexual misconduct with a patient is not "medical treatment" because it serves no medical purpose and is committed for the doctor's sexual gratification without any professional skill involved, the same as with any other sex offender. *Hoover v. University of Chicago Hospitals*, 51 Ill. App. 3d 263, 267, 366 N.E.2d 925, 929 (1977); *Professional Solutions Insurance Co. v. Giolas*, 297 F. Supp. 3d 805, 811 (N.D. Ill. 2017). Corelis seeks an end-run around this reality by claiming that the means of accomplishing the sexual misconduct can be distinguished from the sexual misconduct itself. We emphatically reject this argument.

¶ 67 Further, the mere fact that Karuparthy used a "medical substance" to incapacitate Corelis while she was seeking medical treatment from him at his office does not convert an intentional tort into medical malpractice. As we earlier explained, the substance of the allegations, not clever draftsmanship, controls whether a legal claim falls within an insurance policy's coverage. *Danner*, 2012 IL App (4th) 110461, ¶ 39. The allegations in Corelis's complaint make clear that Karuparthy injected Corelis with a medical substance to immobilize her, not so he could then perform a legitimate medical procedure (as would be the case with administering anesthesia before surgery), but so she would be powerless to stop him from sexually violating her. The purpose of the injection was to enable his subsequent criminal behavior.

¶ 68 Counts I through III assert intentional tort claims predicated upon Karuparthy's subsequent sexual misconduct after administering an injection that rendered Corelis immobile. However, counts IV through VI assert that the administration of the immobilizing drug *by itself* caused the injuries for which Corelis seeks to recover.

¶ 69 Although the negligence counts are arguably pleaded in the alternative to the

intentional tort counts, no rule of law requires this court to ignore the foundational allegations of the other counts in the complaint, particularly when the negligence counts utterly fail to explain how Karuparthy's purported medical negligence caused an injury distinct from those asserted in the intentional tort counts. This is, of course, the point made in *Danner*.

¶ 70　　　　To be clear, in counts I through III, Corelis alleges she was injured as a direct result of Karuparthy's sexual misconduct (touching, grabbing, fondling, kissing). In count IV, Corelis alleges she was falsely imprisoned by the administration of a drug that constrained and impaired her ability to move and, while she was constrained, Karuparthy sexually assaulted her. The allegations of sexual assault are not an essential part of the false imprisonment claim as alleged. The false imprisonment was accomplished purely by the administration of a medical substance that constrained Corelis's ability to move and restrained her freedom. Any actions taken by Karuparthy after immobilizing Corelis do not pertain to whether he falsely imprisoned Corelis.

¶ 71　　　　In counts V and VI, Corelis alleges negligence predicated explicitly on that same immobilization and her lack of knowledge and consent to the administration of the immobilizing drug. Corelis alleges that Karuparthy "directly and proximately" immobilized her because he failed (1) to obtain informed consent, (2) to advise of the side effects, (3) to conduct a proper physical examination, and (4) to make a diagnosis. Importantly, the description of the injection and its effects were identical in counts IV though VI. Those counts allege that Corelis's movement was "constrained" by the unauthorized injection and Corelis sustained damages as a result of her being constrained or rendered immobile. Yet, Corelis never alleges how the injection caused her an injury apart from the sexual assault; she merely alleges conclusory harms "[a]s a direct and proximate result *of that immobility*." (Emphasis added.)

¶ 72　　　　To the extent that Karuparthy failed to obtain consent or explain side effects (which

is essentially the same claim), Corelis's allegations amount to a medical battery—that is, a complete lack of consent for the procedure administered. Those allegations do not constitute a claim for lack of informed consent—that is, a claim that Corelis consented to the administration of the medical substance but would not have consented if Karuparthy had complied with the standard of care and advised her of the benefits and risks of the procedure. See *Fiala v. Bickford Senior Living Group, LLC*, 2015 IL App (2d) 150067, ¶ 36, 43 N.E.3d 1234 ("As we have discussed, plaintiff did not plead a lack of informed consent, but pleaded instead a complete lack of consent. This is key, because the cases distinguish between a lack of consent for the contested act (generally battery) and a lack of informed consent for the contested act (negligence).").

¶ 73      The allegations of the underlying complaint paint a clear, cohesive (and disturbing) course of conduct by Karuparthy. Contrary to Corelis's wishes, this court need not—indeed, cannot—blind itself to Karuparthy's clear criminal scheme merely because Corelis labels the same conduct as "negligent" and omits the specific allegations of sexual misconduct to invoke coverage by Karuparthy's malpractice insurer.

¶ 74      In support of our conclusion, we reiterate what this court wrote in *Danner*:

> "[I]n determining whether an insurance company has a duty to defend, courts are *not* required to consider each count in isolation and ignore facts pleaded in other counts, where the plaintiff has pleaded separate counts against various defendants." (Emphasis in original and internal quotation marks omitted.) *Danner*, 2012 IL App (4th) 110461, ¶ 37.

We add, as shown by the pleadings in this case, that courts should consider each count in a plaintiff's complaint to determine (1) what the plaintiff's complaint is really alleging and (2) considering the totality of the plaintiff's complaint, whether an insurance company has a duty

to defend.

¶ 75        2. *The Physician's Report Submitted Pursuant to Section 2-622 of the Code of Civil*

*Procedure May Not Be Used To Support Corelis's Position*

¶ 76        Our distinguished dissenting colleague correctly observes that a motion for judgment on the pleadings pursuant to section 2-615(e) of the Code is essentially a motion for summary judgment that is limited to the pleadings. However, we disagree with the dissent that when a motion for judgment on the pleadings is so viewed, a section 2-622 report may be considered. For the reasons that follow, we conclude that the section 2-622 report attached to Corelis's underlying complaint cannot be considered part of the complaint when determining whether the allegations potentially fall within coverage.

¶ 77        When a litigant files a section 2-619(a)(9) motion that is mistakenly based on affidavits or evidence that do nothing more than negate the essential allegations of a complaint, courts have sometimes construed those mischaracterized motions as motions for summary judgment, particularly when the trial court and parties treat them as such. See, *e.g.*, *Howle v. Aqua Illinois, Inc.*, 2012 IL App (4th) 120207, ¶¶ 31-39. Courts do this because *proper* section 2-619(a)(9) motions, which must be supported by affidavits or other evidence outside of the complaint, are evaluated in a manner essentially the same as a motion for summary judgment. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116, 619 N.E.2d 732, 735 (1993). Both a *proper* section 2-619(a)(9) motion and a motion for summary judgment rely on materials not contained in the complaint, and those materials are most commonly affidavits, which must be prepared in accordance with Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013). See *Stone Street Partners, LLC v. City of Chicago Department of Administrative Hearings*, 2017 IL 117720, ¶ 4, 88 N.E.3d 699 (stating that a reviewing court "may consider all facts presented in the

pleadings, affidavits, and depositions found in the record" when ruling on a section 2-619 motion). "A section 2-619(a)(9) motion shares procedural similarities with a summary judgment motion in that affidavits and other evidentiary matter [are] permitted to support the affirmative matter ***." *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 53, 988 N.E.2d 984.

¶ 78        In this case, because Corelis did not submit an affidavit or any evidence not contained within the declaratory judgment complaint and the exhibits attached thereto, treating Corelis's motion as seeking *summary* judgment would be inappropriate. The more logical approach is to treat Corelis's motion as seeking a judgment based on the pleadings, which is exactly what the parties and trial court did.

¶ 79        Corelis's motion to dismiss pursuant to section 2-619(a)(9) could not comply with the requirements of section 2-619(a)(9) because a section 2-622 affidavit, on its own, does not comply with Rule 191(a), which governs the submission of affidavits in support of section 2-619 motions. Corelis did not attempt to comply with Rule 191; instead, she merely attached a copy of the section 2-622 affidavit she had filed in this case, noting that Professional Solutions neglected to include it as part of the underlying complaint even though Corelis had attached it to that complaint.

¶ 80        This court has long held that a section 2-622 affidavit does not comply with the requirements of Rule 191. *Essig v. Advocate BroMenn Medical Center*, 2015 IL App (4th) 140546, ¶¶ 41-49. Further, the parties' belief that the section 2-622 affidavit should be considered a part of the complaint is incorrect. See, *e.g.*, *Osten v. Northwestern Memorial Hospital*, 2018 IL App (1st) 172072, ¶ 24, 116 N.E.3d 216; *Garisson v. Choh*, 308 Ill. App. 3d 48, 56-57, 719 N.E.2d 237, 243 (1999). In *Osten*, the First District wrote the following:

          "[P]laintiff's contention that the health professional's report attached to a section

2-622 affidavit is to be treated as part of the complaint was rejected in *Garrison v. Choh*, 308 Ill. App. 3d 48[, 719 N.E.2d 237] (1999). There, we observed that the purpose of a section 2-622 affidavit and a health professional report is 'not to bolster or enhance [the] complaint but to satisfy the requirements of section 2-622 of the Code.' *Id.* at 56. The health professional's report certifies that the plaintiff's action has reasonable merit, and the report must provide reasons for that determination, but 'those reasons cannot be said to be incorporated into the complaint for purposes of determining the misconduct of the defendant for which the plaintiff seeks recovery.' *Id.* at 56-57. Therefore, the factual assertions in the physician's report attached to the section 2-622 affidavit are not considered to be a part of plaintiff's complaint." *Osten*, 2018 IL App (1st) 172072, ¶ 24.

We agree with the First District's opinion in *Osten* and view it as consistent with what this court wrote in *Essig*.

¶ 81        Corelis's motion, properly construed, sought a substantive ruling on the merits that the policy required Professional Solutions to defend the underlying action because the underlying complaint alleged facts that fell potentially within the policy's coverage. Indeed, the trial court understood Corelis to be seeking relief on the merits because that is exactly the relief it provided when granting the motion to dismiss. The court found that Professional Solutions had a duty to defend the claims in the underlying complaint because the allegations stated a valid claim for negligence covered by the policy. Because the trial court's ruling addressed the merits of the declaratory judgment action, it constituted a judgment on the pleadings. Accordingly, the issue before us is whether judgment on the pleadings in favor of Corelis was proper.

¶ 82        We emphasize that, although a section 2-622 affidavit could be considered part of

the complaint in some instances, it plays no role in a procedure like the one in the present case—namely, a motion for judgment on the pleadings—which is essentially akin to a motion for summary judgment. This court explained at length in *Essig* why section 2-622 affidavits fail to meet the requirements of Rule 191(a), and that same analysis applies in this case. Further, it makes no difference which party is asking the trial court at the hearing on the motion for judgment on the pleadings to consider the section 2-622 affidavit; the court's consideration of the section 2-622 affidavit would be improper no matter which party asked the court to consider it.

¶ 83                              3. *The Criminal Conduct Exclusion Applies*

¶ 84          We note that the trial court did not consider the exclusionary provisions of the policy. Although we have concluded that the allegations of the underlying complaint do not fall within the policy's coverage, we nonetheless address the policy exclusions asserted by Professional Solutions.

¶ 85                              a. Judicial Notice of the Charging Documents

¶ 86          Professional Solutions first argues that Karuparthy's pleading guilty to crimes arising out of the allegations of the underlying complaint trigger the criminal acts exclusion. Professional Solutions likewise argues that Karuparthy's convictions fall under the sexual misconduct exclusions. In support of these arguments, Professional Solutions included in the appendix to its brief copies of the criminal charges against Karuparthy that initiated the criminal case described in the declaratory judgment complaint.

¶ 87          These documents show that on December 19, 2018, the State charged Karuparthy by information with two counts of criminal sexual abuse (720 ILCS 5/11-1.50(a)(2) (West 2018)). The charges alleged that on August 23, 2018, Karuparthy, "knowing that [Corelis] was unable to give knowing consent, committed an act of sexual conduct with [Corelis], in that [Karuparthy]

- 24 -

touched [her] vagina" and "fondled [her] breast" for the purpose of sexual gratification.

¶ 88 Corelis asserts that we should not consider the charging documents because Professional Solutions did not present them to the trial court and attempts to supplement the record so it can present the evidence for the first time on appeal. For their part, the medical defendants concede that the charging documents were appropriately before the trial court. Professional Solutions responds that this court may take judicial notice of the charging documents because they are court records. We agree with Professional Solutions.

¶ 89 No party contests the validity of the charging documents, which constitute judicial records capable of judicial notice. *In re M.S.*, 2015 IL App (4th) 140857, ¶ 42, 29 N.E.3d 1241. Moreover, a court may consider all facts capable of judicial notice when deciding a motion for judgment on the pleadings. *Hooker*, 2016 IL 121077, ¶ 21. As the First District explained in *Dahms*, 2016 IL App (1st) 141392, ¶ 77:

> "We acknowledge that our consideration of the fact of Dahms's conviction, raised in Country Mutual's amended declaratory-judgment action, is evidence that is beyond the four corners of Enadeghe's complaint. Nonetheless, 'under certain circumstances, [a court may] look beyond the underlying complaint in order to determine an insurer's duty to defend.' *Pekin Insurance Co.*, 237 Ill. 2d at 459. 'In fact, " '[t]he *only time* such evidence should not be permitted is when it tends to determine an issue crucial to the underlying lawsuit.' " ' (Emphasis in original.) *Bartkowiak*[ *v. Underwriters at Lloyd's, London*], 2015 IL App (1st) 133549, ¶ 21[, 39 N.E.3d 176] (quoting *Pekin Insurance Co.*, 237 Ill. 2d at 461, quoting *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 305[, 461 N.E.2d 471] (1983)). As the supreme court explained,

' "[t]o require the trial court to look solely to the complaint in the underlying action to determine coverage would make the declaratory proceeding little more than a useless exercise possessing no attendant benefit and would greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties." ' (Emphasis omitted.) *Pekin Insurance Co.*, 237 Ill. 2d at 461 (quoting *Envirodyne Engineers, Inc.*, 122 Ill. App. 3d at 304-05); see also *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 1032[, 886 N.E.2d 1166] (2008) ('the trial court need not wear judicial blinders and may look beyond the complaint at other evidence appropriate to a motion for summary judgment' (internal quotation marks omitted))."

¶ 90 We note that the Third District recently reaffirmed these principles in *Erie Insurance Co. v. Gibbs*, 2023 IL App (3d) 220143, ¶¶ 27-32. In that case, the Third District affirmed the trial court's judgment, which found the evidence conclusively established that the insured acted intentionally. *Id.* ¶ 2. That finding meant the insured's conduct was excluded from coverage by the insurance policies. *Id.* We acknowledge that the facts in *Erie* are, of course, quite different from those in the present case. Nonetheless, we conclude that the Third District's discussion about "extrinsic evidence from criminal convictions," which can be used to determine whether a duty to defend arises (*id.* ¶¶ 27-32), supports our application of those same principles in this case.

¶ 91 b. The Factual Bases for Karuparthy's Pleas

¶ 92 Alternatively, Corelis and the medical defendants argue that this court cannot rely on the original charging documents because Karuparthy did not plead guilty to those charges. Instead, Karuparthy pleaded guilty to amended charges of assault and reckless conduct. They note

that Professional Solutions did not include the amended charging documents in the record, nor did Professional Solutions include a report of proceedings from the guilty plea hearing, which would have established the factual basis for the pleas. Without this information, they maintain, this court can only speculate as to what specific criminal acts Karuparthy admitted committing.

¶ 93 Professional Solutions could have easily prevented this argument by including the factual basis in any appropriate form in the record to the trial court, such as the report of proceedings or amended charges filed by the State. Nonetheless, we conclude that Professional Solutions' failure to abide by best practices does not change our analysis.

¶ 94 To begin, we deem significant that the medical defendants do not contest that Karuparthy admitted (1) he engaged in criminal conduct on August 23, 2018, when he purportedly treated Corelis and (2) the criminal convictions to which he pleaded guilty arose out of the same allegations contained in the underlying complaint. Corelis and the medical defendants make much of the mental states and potential acts required for the crimes to which Karuparthy pleaded guilty, which are reckless conduct and assault. Corelis and the medical defendants ignore the judicial admissions contained in the pleadings.

¶ 95 In this case, Professional Solutions alleged in its declaratory judgment complaint that Karuparthy was charged with crimes arising out of the allegations in the underlying complaint. In the medical defendants' answer to the declaratory judgment complaint, the medical defendants admitted, in their own words, that "the Criminal Case arose out of the same transaction or occurrence that gave rise to the Corelis lawsuit, rather than it is 'based on the same events which gave rise to the Corelis lawsuit.' " They further admitted that Karuparthy pleaded guilty to reckless conduct and assault in the criminal case predicated on (or at least, "arising out of") the allegations in the underlying complaint.

- 27 -

¶ 96 We again note that the underlying complaint alleges that Karuparthy (1) injected Corelis with a substance that rendered her immobilized, (2) immobilized her without her consent and without informing her of the potential side effects of the substance, (3) kissed, fondled, and touched Corelis while she was immobilized, (4) left her alone while under the effects of the immobilizing drug, and (5) left again after seeing she was hemodynamically compromised. Corelis alleged that as a result of her immobilization, she suffered severe physical and emotional pain and suffering, including fear of being raped.

¶ 97 No matter how one construes these allegations in relation to the elements of the crimes to which Karuparthy pleaded guilty, the only conclusion based upon the pleadings and admissions in the record is that Karuparthy's criminal actions are the same as the acts that gave rise to the underlying complaint. If one ignores the negligence claims entirely, then one must conclude that Karuparthy committed the offense of assault by immobilizing Corelis and placing her in imminent fear of being raped. Conversely, if one considers only the negligence claims, one must conclude that Karuparthy committed (1) assault by immobilizing Corelis without her consent and (2) reckless conduct by leaving the examination room after giving the immobilizing injection. In short, when Karuparthy pleaded guilty to crimes arising out of the same conduct alleged in the underlying complaint, the criminal acts exclusion applied, and Professional Solutions had no duty to defend.

¶ 98 The medical defendants contend that the criminal convictions cannot be used to show that he committed the intentional conduct of touching, grabbing, fondling, and kissing Corelis. The medical defendants completely miss the point.

¶ 99 The criminal acts exclusion applies to more than just sexual misconduct. The medical defendants seem to think that if the criminal convictions cannot be directly tied to a sexual

assault, then Professional Solutions must be required to defend. Even in the arguments they make concerning the negligence counts, the medical defendants argue only that the convictions cannot prove that Karuparthy engaged in sexual assault. However, Karuparthy's guilty pleas exclude coverage irrespective of whether he engaged in sexual misconduct.

¶ 100    If Karuparthy engaged in criminal conduct that gave rise to a civil claim, the policy excludes coverage whether or not the criminal acts were committed intentionally, knowingly, or recklessly. The medical defendants admit that the convictions arise out of the same transaction or occurrence as the allegations in the underlying complaint. Corelis, obviously, seeks recovery for the same (criminal) conduct. Accordingly, the criminal acts exclusion applies irrespective of whether Karuparthy pleaded guilty to sexual misconduct or "merely" to criminal conduct during the course of "treating" Corelis.

¶ 101    The intentional torts asserted by Corelis are clearly not covered by the policy. Therefore, if Karuparthy's convictions for assault and reckless conduct pertain to the alleged negligent conduct, that suffices to trigger the exclusion.

¶ 102    4. *The Guilty Pleas Are Inconsistent With Negligence*

¶ 103    The trial court found that Karuparthy's guilty plea was mere "*prima facie* evidence of intentional conduct." The court's conclusion was both incorrect and misguided.

¶ 104    For the reasons we just explained, Karuparthy's guilty pleas demonstrated that his conduct could not have been negligent. Assault requires intentional or knowing actions. Reckless conduct requires a *conscious* disregard of a known and unjustifiable risk. Both of these crimes are necessarily inconsistent with negligent conduct. Accordingly, the trial court erred when it found that the convictions were not conclusive evidence of intentional conduct.

¶ 105    Moreover, as explained by the First District in *Dahms*, the criminal acts exclusion

is not coextensive with the intentional acts exclusions. Indeed, the criminal acts exclusion is clearly and purposefully broader than the intentional acts exclusions. Karuparthy unequivocally admitted that he pleaded guilty to crimes arising out of the same conduct described in the underlying complaint. That conduct was unquestionably criminal in nature. Accordingly, the trial court erred by failing to analyze the criminal acts exclusions, and we conclude that Karuparthy's guilty pleas excused Professional Solutions' duty to defend.

¶ 106      We reverse the judgment of the trial court and remand with directions for it to enter judgment in favor of Professional Solutions on its declaratory judgment complaint.

¶ 107                              III. CONCLUSION

¶ 108      For the reasons stated, we reverse the trial court's order granting Corelis's motion to dismiss and remand with directions to enter judgment in favor of Professional Solutions on its declaratory judgment complaint.

¶ 109      Reversed and remanded with directions.

¶ 110      JUSTICE HARRIS, dissenting:

¶ 111      I respectfully dissent. On appeal, Professional Solutions argues the trial court erred by granting Corelis's motion to dismiss its declaratory judgment action and denying its motion for judgment on the pleadings. It contends it owed no duty to defend in the underlying action based upon Karuparthy's criminal convictions "that arose out of the same facts and circumstances" as those alleged in Corelis's underlying complaint. For the reasons that follow, I would find that the court should have denied both Corelis's motion to dismiss and Professional Solutions's motion for judgment on the pleadings. Because I find questions of material fact exist regarding whether Professional Solutions had a duty to defend, I would hold that remand for further proceedings in the declaratory judgment action is required.

- 30 -

¶ 112                     A. The Parties' Motions and Standard of Review

¶ 113                         1. *Corelis's Motion to Dismiss*

¶ 114      The record shows Corelis brought her motion to dismiss the declaratory judgment action pursuant section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2020)), which permits involuntary dismissal when "the claim asserted against [the] defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." On appeal, Professional Solutions contends Corelis's motion to dismiss was brought and considered under the wrong statutory section. It maintains that because Corelis was, in substance, challenging the sufficiency of the complaint itself, her motion to dismiss should have been brought under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). I agree with that contention.

¶ 115      "A motion to dismiss under section 2-615 challenges the legal sufficiency of the plaintiff's claim, while a motion to dismiss under section 2-619 admits the legal sufficiency of the claim but asserts defenses or defects outside the pleading to defeat the claim." *Cahokia Unit School District No. 187 v. Pritzker*, 2021 IL 126212, ¶ 23, 184 N.E.3d 233. When ruling on a section 2-615 motion to dismiss, "a court must determine whether the facts alleged in the complaint, viewed in the light most favorable to the plaintiff and taking all well-pleaded facts as true, are sufficient to state a cause of action upon which relief may be granted." *Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶ 20, 182 N.E.3d 123. "A court should not dismiss a complaint pursuant to [section 2-615] unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Id.* "In ruling on a section 2-615 motion, only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered." *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 291, 938 N.E.2d 471, 477 (2010).

¶ 116 Ultimately, both types of motions to dismiss admit "as true all well-pleaded facts and all reasonable inferences from those facts." *Cahokia Unit School District No. 187*, 2021 IL 126212, ¶ 24. "When ruling on a motion to dismiss under either section ***, a court must construe the pleadings and supporting documents in the light most favorable to the nonmoving party." *Id.* Additionally, review under either section is *de novo*. *Id.*

¶ 117 In her motion to dismiss, Corelis alleged that the declaratory judgment action was "defeat[ed]" by (1) the negligence claims set forth in counts V and VI of her underlying complaint and (2) the section 2-622 physician's report that was filed in support of her underlying complaint. Although she characterized her negligence claims and section 2-622 physician's report as "affirmative matters" that defeated the declaratory judgment cause of action, such matters are more accurately described as part of the declaratory judgment complaint itself.

¶ 118 Significantly, a document that is attached to a complaint as an exhibit is "considered to be part of the pleading, and facts stated in the exhibit are considered as having been alleged in the complaint." *Tucker v. Soy Capital Bank & Trust Co.*, 2012 IL App (1st) 103303, ¶ 22, 974 N.E.2d 820. "[M]atters contained in such exhibits which conflict with allegations of the complaint negate any contrary allegations of the complaint." (Internal quotation marks omitted.) *Id.* ¶ 23; see also *Van Duyn v. Smith*, 173 Ill. App. 3d 523, 538, 527 N.E.2d 1005, 1015 (1988) ("Only well-pleaded facts are admitted by a section 2-615 motion to dismiss and it is commonly understood that attached exhibits supercede any inconsistent allegations of a complaint."). As a result, "a motion to dismiss a complaint with attached exhibits is still considered as one brought under section 2-615 under which [courts] look only to the sufficiency of the pleadings." *Tucker*, 2012 IL App (1st) 103303, ¶ 22.

¶ 119 In this case, Professional Solutions attached Corelis's underlying complaint to its

declaratory judgment complaint. Thus, the underlying complaint, and Corelis's negligence claims, became part of its pleading in the declaratory judgment action.

¶ 120 Although the section 2-622 affidavit and physician's report were not attached to the declaratory judgment complaint, there is no dispute by the parties that those materials should have been attached as an exhibit and considered as part of Professional Solutions's pleading. Both before the trial court and on appeal, Professional Solutions has maintained that the failure to attach the physician's report to its declaratory judgment complaint was inadvertent. In its appellant's brief, it acknowledges that the physician's report "should be considered as part of the Complaint for Declaratory Judgment." Also, although not attached, we may take judicial notice of the existence of the affidavit and report. See *Phusion Projects, Inc. v. Selective Insurance Co. of South Carolina*, 2015 IL App (1st) 150172, ¶ 9 n.2, 46 N.E.3d 1190 ("Although the underlying complaints were not attached as exhibits to the operative pleading, we will take judicial notice of them as matters of public record.").

¶ 121 The majority finds that the section 2-622 affidavit and physician's report should not be considered at all in this case. It points to case authority that holds such materials (1) do "not comply with Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013), which governs the submission of affidavits in support of section 2-619 motions," and (2) may not be considered as part of a medical malpractice complaint. *Supra* ¶¶ 79-80; see *Essig*, 2015 IL App (4th) 140546, ¶ 43 (finding a section 2-622 physician's report was insufficient for the purpose of opposing a defendant's motion for summary judgment in a medical malpractice action); *Osten*, 2018 IL App (1st) 172072, ¶¶ 10-11, 24 (finding factual assertions in a section 2-622 physician's report may not be considered to be a part of the plaintiff's medical malpractice complaint when considering the propriety of a section 2-619 dismissal); *Garisson*, 308 Ill. App. 3d at 57 n.3 (holding section

2-622 materials were not incorporated into the plaintiff's medical malpractice complaint for purposes of determining what issues were raised for trial); but see *Collins v. Superior Air-Ground Ambulance Service, Inc.*, 338 Ill. App. 3d 812, 817, 789 N.E.2d 394, 398 (2003) (holding "the facts alleged in the physician's affidavit attached to the medical malpractice complaint pursuant to section 2-622 of the [Code] are part of the complaint" when considering whether a section 2-615 dismissal was appropriate). While I do not dispute the holdings in the cases the majority cites, I do find them inapposite to the circumstances presented here.

¶ 122　　　The case at bar arises from a complaint for a declaratory judgment regarding an insurer's duty to defend, not a medical malpractice action. It is the attachment of materials to the declaratory judgment complaint, not Corelis's underlying complaint alleging medical negligence, that is at issue. As noted, Professional Solutions agrees that the section 2-622 physician's report was inadvertently omitted from its pleading and that it should be "considered as part of the Complaint for Declaratory Judgment." Additionally, unlike *Essig*, the section 2-622 affidavit and physicians report were not being offered in this case as a substitute for trial testimony in opposition to a motion for summary judgment. See *Essig*, 2015 IL App (4th) 140546, ¶¶ 45-46 (discussing what is required when a party offers expert opinions in written form at the summary judgment stage).

¶ 123　　　The pertinent issue here is whether Corelis's complaint has alleged claims that potentially fall within coverage of the insurance policy or whether they amount to a "groundless attempt" to trigger coverage. *Supra* ¶ 61. Both the section 2-622 physician's report and the underlying complaint attached as an exhibit to the complaint for declaratory judgment are relevant to a consideration of that issue. Matters contained in the physician's report and the underlying complaint that conflict with allegations of the declaratory judgment complaint "negate any

contrary allegations" of the declaratory judgment complaint. (Internal quotation marks omitted.) *Tucker*, 2012 IL App (1st) 103303, ¶ 23. The physician's report is also relevant to showing the potential for amendment of Corelis's medical negligence claims, which, as noted by the dissent in *Danner*, should be liberally allowed. See *Grove v. Carle Foundation Hospital*, 364 Ill. App. 3d 412, 417, 846 N.E.2d 153, 157 (2006) ("Illinois law supports a liberal policy of allowing amendments to the pleadings so as to enable parties to fully present their alleged cause or causes of action."); see also *Danner*, 2012 IL App (4th) 110461, ¶ 57 (Pope, J., concurring in part and dissenting in part).

¶ 124    Here, I find Corelis's challenge to the declaratory judgment complaint amounted to a challenge to the legal sufficiency of that complaint based upon alleged defects that were apparent from its face, *i.e.*, that the allegations of the underlying complaint, attached to the declaratory judgment complaint, negated Professional Solutions's assertion that it had no duty to defend. *Rehfield*, 2021 IL 125656, ¶ 20 (stating a section 2-615 motion to dismiss "challenges the legal sufficiency of a complaint by alleging defects on the face of the complaint"). Accordingly, Corelis's motion to dismiss should have been brought under section 2-615 of the Code and the motion should not have been granted unless it was clearly apparent that no set of facts could be proved that would entitle Professional Solutions to recovery.

¶ 125    2. *Professional Solutions's Motion for Judgment on the Pleadings*

¶ 126    Professional Solutions filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Code (735 ILCS 5/2-615(e) (West 2020)), which provides that "[a]ny party may seasonably move for judgment on the pleadings." Such a motion "is essentially a motion for summary judgment that is limited to the pleadings." *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 52, 129 N.E.3d 1181. "In ruling on the motion, a court will consider only those facts

apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record." *Id.* "All well-pleaded facts and reasonable inferences therefrom are taken as true." *Id.* "Judgment on the pleadings is proper when the pleadings disclose no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.* "A circuit court's rulings on *** a motion for judgment on the pleadings [is] subject to *de novo* review." *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 65, 984 N.E.2d 449.

¶ 127                    B. Insurer's Duty to Defend

¶ 128        "[T]he insurer's duty to defend its insured is broader than its duty to indemnify." *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 456, 930 N.E.2d 1011, 1017 (2010). "In a declaratory judgment action ***, where the issue is whether the insurer has a duty to defend, a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy." *Id.* at 455. "If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent." *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 155, 828 N.E.2d 1092, 1098 (2005). "The allegations in the underlying complaint must be liberally construed in favor of the insured." *Id.* "[I]f several theories of recovery are alleged in the underlying complaint against the insured, the insurer's duty to defend arises even if only one of several theories is within the potential coverage of the policy." *Id.*

¶ 129        It is true that courts "have not been blind to the fact that plaintiffs may have an incentive to draft pleadings in a way that triggers the defendant's insurance coverage." *Country Mutual Insurance Co. v. Dahms*, 2016 IL App (1st) 141392, ¶ 47, 58 N.E.3d 118. "Even where a complaint alleges an act is 'negligent,' if the allegations show that what is truly alleged can only

be characterized as an intentional act, the substance will control over the moniker placed on it by a plaintiff." *Id.*

¶ 130 However, "a pleading is not a transparent attempt to plead into coverage when the facts support a cause of action." *Pekin Insurance Co. v. Johnson-Downs Construction, Inc.*, 2017 IL App (3d) 160601, ¶ 20, 87 N.E.3d 295. Further, it should be a " 'rare' " occurrence that a court is "so confident that the allegations could not possibly be considered to describe 'negligent' conduct, and can only be credibly characterized as intentional conduct, that [it] can say that the allegations in an underlying complaint could not even *potentially* fall within the coverage of a policy." (Emphasis in original.) *Dahms*, 2016 IL App (1st) 141392, ¶ 54.

¶ 131 C. This Case

¶ 132 On appeal, Professional Solutions argues that once Karuparthy pleaded guilty in his criminal case to charges "that arose out of the same facts and circumstances" as the underlying complaint, the totality of his actions during the August 2018 medical visit could only be considered intentionally wrongful or criminal in nature and not negligent. It maintains that, as a result, it is clear that the allegations of the underlying complaint could not even potentially fall within coverage of the policy at issue and that Corelis's allegations, instead, fell within several policy exclusions. Professional Solutions further contends that, due to the guilty plea, Corelis is collaterally estopped from alleging that Karuparthy's actions were negligent.

¶ 133 I disagree. I find that in counts V and VI of her underlying complaint, Corelis alleged claims of medical negligence that could *potentially* be within the coverage of the policy. In cases such as this one, the potential for coverage is the key factor for consideration. Moreover, Professional Solutions's allegations regarding Karuparthy's criminal case and his guilty plea do not establish, as a matter of law, that the alleged acts which formed the basis for Corelis's

negligence counts constituted only intentional or criminal wrongs by Karuparthy and not negligence.

¶ 134                              1. *Allegations in the Underlying Complaint*

¶ 135          There is no dispute that the policy at issue covered claims of medical negligence in "the diagnosis of, treatment or medical care for[,] or medical consultation regarding a patient's medical condition." There is also no dispute that intentional tort claims were both not covered under the policy and, in fact, explicitly excluded from coverage.

¶ 136          Here, in counts I through IV of her underlying complaint, Corelis clearly brought claims for intentional torts, which were not covered under the policy. Specifically, counts I through III—asserting claims for battery, assault, and intentional infliction of emotional distress—contained allegations that during his medical treatment of Corelis, Karuparthy "repeatedly and intentionally touched, grabbed, fondled, and kissed [Corelis's] person." In count IV, Corelis asserted a claim for false imprisonment, alleging Karuparthy injected her with a medical substance that impaired her ability to move and "constituted a restraint on her freedom and her ability to leave the room" when he committed the above unwanted sexual acts.

¶ 137          In counts V and VI, Corelis alleged negligence against Karuparthy and Integrative Pain Centers. She asserted various negligent omissions surrounding the injection of the medical substance that impaired her movement. In its declaratory judgment complaint, Professional Solutions alleged that all six counts of Corelis's underlying complaint arose out of "Karuparthy's intentional act of injecting Corelis with a substance that limited her movement and allowed [him] to touch, grab fondle, and kiss Corelis'[s] person," and it noted that such unwanted sexual conduct fell outside the scope of the policy's definition of " 'Professional Services.' " Critically, however, there is nothing on the face of the underlying complaint that indicates Corelis's negligence claims

were in anyway based or dependent upon proof of the factual allegations of unwanted sexual touching, facts that were indispensable to the claims set forth in counts I through IV. Although all counts shared some common factual allegations, counts V and VI do not describe the intentionally wrongful acts set forth in counts I through IV.

¶ 138    In counts V and VI of her complaint, Corelis also set forth a different description of injury than appeared elsewhere in her underlying complaint. Specifically, she asserted injuries that included past and future medical treatment, pain and discomfort, loss of normal life, and emotional distress. Again, counts I through IV of the underlying complaint all alleged injuries connected to the alleged unwanted sexual conduct. Nothing on the face of the underlying complaint indicates Corelis was claiming the same injuries in counts V and VI as she did in counts I through IV. Further, although the majority suggests Corelis's allegations were impermissibly vague, stating her negligence counts "utterly fail to explain how Karuparthy's purported medical negligence caused an injury distinct from those asserted in the intentional tort counts" (*supra* ¶ 69), it has been stated that "even 'vague, ambiguous allegations against an insured should be resolved in favor of finding a duty to defend.' " *Acuity v. M/I Homes of Chicago, LLC*, 2022 IL App (1st) 220023, ¶ 49, 205 N.E.3d 174 (quoting *Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, ¶ 26, 26 N.E.3d 421).

¶ 139    As noted above, "a pleading is not a transparent attempt to plead into coverage when the facts support a cause of action." *Johnson-Downs Construction, Inc.*, 2017 IL App (3d) 160601, ¶ 20. In this instance, Corelis alleged facts to support her negligence claims.

¶ 140    In a medical negligence case, a plaintiff must prove certain elements: " 'the proper standard of care against which the defendant physician's conduct is measured; an unskilled or negligent failure to comply with the applicable standard; and a resulting injury proximately caused

by the physician's want of skill or care.' " *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 112, 806 N.E.2d 645, 653 (2004) (quoting *Purtill v. Hess*, 111 Ill. 2d 229, 241-42, 489 N.E.2d 867, 872 (1986)). In the underlying complaint, Corelis alleged she sought medical care from Karuparthy and he injected her with a medical substance that "constrained, impaired, and/or limited her ability to move." She also alleged that Karuparthy had a "duty to act in a reasonably careful manner in his care and treatment of [her]," but that he deviated from that duty by committing various negligent omissions, including failing to (a) obtain her informed consent for administering the medical substance, (b) explain side effects of the medical substance, (c) conduct a proper clinical examination prior to administering the injection, and (d) make a diagnosis before administering the medical substance.

¶ 141       The section 2-622 physician's report that accompanied Corelis's complaint indicated that during the medical visit in question, Corelis received medical treatment from Karuparthy that included the administration of intravenous vitamins, a thumb joint injection, and intravenous ketamine. It set forth several ways in which Karuparthy's care of Corelis fell below the requisite standard of care. Aside from the omissions explicitly set forth in counts V and VI, the report additionally noted a deviation from the standard of care in connection with Karuparthy giving Corelis the thumb joint injection. The report also suggested negligence in the manner that Karuparthy administered the ketamine injection, the immobilizing "medical substance." Further, it indicated that Karuparthy had administered ketamine to Corelis when providing medical treatment to her in the past, stating: "On this visit, *unlike other visits*, Dr. Karuparthy used a bolus to administer ketamine. A reasonably careful anesthesiologist should recognize that a patient can react differently to the manner in which ketamine is administered. According to his own notes, Dr. Karuparthy failed to do so." (Emphasis added.).

¶ 142    On appeal, Professional Solutions characterizes the injection of a medical substance that impaired Corelis's ability to move as a "predicate to the assault," or "part and parcel of the assault, and inseparable." However, I find nothing in the allegations of the underlying complaint that requires an inference that Karuparthy's act of administering the injection could *only* have been an intentional wrong or an inseparable component of the alleged sexual conduct. See. *Dahms*, 2016 IL App (1st) 141392, ¶ 56 ("[W]hile we could certainly conceive of a scenario in which these allegations described intentional conduct, we likewise could see the potential that these actions demonstrate less than intentional behavior, be it recklessness or even *** negligence."). Under the facts alleged, Karuparthy could have both negligently provided medical treatment to Corelis and engaged in subsequent unwanted acts of "touching, grabbing, fondling, and kissing."

¶ 143    Further, I find Professional Solutions's contention on appeal that Corelis's negligence claims were "simply an attempt to bring her [c]omplaint within the realm of coverage" of the policy at issue, is inconsistent with the position it took before the trial court. Below, Professional Solutions explicitly argued as follows:

> "[B]ased on [the section 2-622] physician's report and based on the negligence allegations, we defended. And we were going to—we'd still be defending but for this intervening cause where now you have the doctor pleading guilty to assault and battery [*sic*].
>
> So that changes things under the case law. While [opposing counsel] is right about the general case law about duty to defend, once you have a plea agreement like this, it takes it out of coverage."

This argument acknowledges that, at least initially, Professional Solutions determined that Corelis's underlying complaint alleged facts that were potentially within policy coverage and that

the potential for coverage was not removed until Karuparthy's guilty plea in his criminal case.

¶ 144　　　　Ultimately, I find the case at bar is not one of those " 'rare' " cases where the allegations of the underlying complaint could not possibly be considered to describe negligent conduct. See *id.* ¶ 54. The factual allegations set forth by Corelis in connection with her negligence counts potentially describe a course of negligent medical treatment by Karuparthy, which preceded the alleged sexual assault of his patient, and a separate claimed injury. Even when considering Corelis's underlying complaint as a whole and in its entirety, the critical element for consideration is whether there is a *potential* for coverage. Before the trial court, Professional Solutions acknowledged such potential existed in the present case at least prior to the resolution of Karuparthy's criminal case. To the extent Professional Solutions argues otherwise on appeal, I would find its argument lacks merit.

¶ 145　　　　　　　　2. *Effect of Karuparthy's Guilty Plea*

¶ 146　　　　Professional Solutions further argues that it may be determined as a matter of law that Corelis's alleged injuries in the underlying complaint were caused by only intentional or criminal conduct (as opposed to negligent conduct). It relies on Karuparthy's guilty plea in his criminal case and his admission when answering the declaratory judgment complaint that his "[c]riminal [c]ase arose out of the same transaction or occurrence that gave rise to the Corelis lawsuit." According to Professional Solutions, Corelis was collaterally estopped by Karuparthy's criminal convictions from alleging that Karuparthy's actions were negligent.

¶ 147　　　　In cases like the one at bar, questions regarding whether there was an intentional injury or whether a particular act was criminal may be resolved by the fact of a criminal conviction. *Id.* ¶ 76 (finding that following the insured's criminal conviction, competing interpretations of his alleged conduct in a civil action became irrelevant and the applicability of a criminal-acts exclusion

of an insurance policy "became clear and free from doubt"). Further, as asserted by Professional Solutions, "estoppel effect may be accorded to a prior criminal conviction in an appropriate case." *American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 387, 739 N.E.2d 445, 451 (2000). "Collateral estoppel is an equitable doctrine, the application of which precludes a party from relitigating an issue decided in a prior proceeding." *Id.* The threshold requirements for application of the doctrine are that (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *Id.*

¶ 148　　　In this case, Professional Solutions attached exhibits to its declaratory judgment complaint that included an order of probation and a sentencing order in Karuparthy's criminal case, showing he pleaded guilty to the offenses of assault and reckless conduct. The record does not contain a factual basis for Karuparthy's pleas. Instead, from Karuparthy's answer to the declaratory judgment case, we know only that Karuparthy's "[c]riminal [c]ase arose out of the same transaction or occurrence that gave rise to the Corelis lawsuit." In my view, given these circumstances, we cannot say as a matter of law that Karuparthy's criminal convictions resolve the issue of whether Corelis's injuries as alleged in the negligence counts could be viewed as only intentionally or criminally caused.

¶ 149　　　Significantly, the transaction or occurrence that gave rise to Corelis's lawsuit was the August 2018 medical visit. She alleged a series of acts by Karuparthy during that visit. Nothing in the pleadings establishes upon what specific acts during the visit that Karuparthy's convictions for assault and reckless conduct were based. See *Allstate Insurance Co. v. Kovar*, 363 Ill. App. 3d 493, 502, 842 N.E.2d 1268, 1276 (2006) (finding insurer failed to establish an identity of issues

for estoppel purposes where it offered only a certified copy of the insured's conviction and the document did "not recount any of the facts underlying the conviction"). It is speculative to hold that either conviction necessarily concerns the factual allegations that support Corelis's negligence counts. Accordingly, I find it is not clear or free from doubt that Karuparthy's criminal convictions were based upon the same specific conduct that Corelis alleged was negligent and, on this record, the convictions may not be given preclusive effect.

¶ 150                                        3. *Policy Exclusions*

¶ 151          For much of the same reasons already expressed, I find that we also cannot say, as a matter of law, that the policy exclusions bar coverage in his case.

¶ 152          Professional Solutions notes that the policy at issue contains exclusions for any damages, incidents, claims, or suits that arose out of, were based upon, or were attributable to (1) acts or omissions that violated a criminal statute, (2) false imprisonment, (3) improper sexual conduct, or (4) intentional injuries. Again, however, the pertinent consideration is whether "the underlying complaint alleges facts within or potentially within policy coverage." *Midwest Sporting Goods Co.*, 215 Ill. 2d at 155. "An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaint that the allegations set forth in that complaint fail to state facts that bring the case within or *potentially* within the insured's policy coverage." (Emphases added.) *Id.* at 154.

¶ 153          In this instance, Corelis set forth factual allegations in her underlying complaint that supported claims for negligence. From the face of her complaint, it is not clear that her negligence claims were in any way based upon her allegations of intentional and unwanted "touching, grabbing, fondling, and kissing" by Karuparthy. As alleged, it cannot be determined whether the injury claimed in counts V and VI that resulted from Karuparthy's negligence is the

same or different from the injury claimed by Corelis in her other counts. Additionally, the pleadings in this case do not conclusively establish that Karuparthy's criminal conduct was the same particular conduct upon which the negligence counts were based.

¶ 154                                    4. *Result*

¶ 155          As set forth above, Professional Solutions argues the trial court erred by granting Corelis's motion to dismiss its declaratory judgment action and by denying its motion for a judgment on the pleadings. I find Corelis's motion to dismiss should not have been granted because Professional Solutions's declaratory judgment complaint set forth facts that, if proven true, would have entitled it to declaratory relief. Additionally, Professional Solutions was not entitled to the grant of its motion for a judgment on the pleadings because a material question of fact continued to exist in the case.

¶ 156          In connection with its declaratory judgment complaint, Professional Solutions alleged it had no duty to defend Karuparthy and Integrative Pain Centers in the underlying case. It pointed to Karuparthy's guilty plea in his criminal case and alleged that because Corelis's underlying complaint, including her negligence claims, arose solely out of intentionally wrongful or criminal conduct, there was no coverage under its policy and Karuparthy's acts were, in fact, excluded from coverage. If proven true, such allegations would entitle Professional Solutions to its requested relief. For example, if it were to establish that Karuparthy's guilty pleas were based on the same operative facts as Corelis's negligence counts and that Corelis's claims of injury in her negligence counts were based on her allegations of intentional and unwanted "touching, grabbing, fondling, and kissing" by Karuparthy, then there could be no coverage under the policy. However, as the case currently stands, such matters cannot be established as a matter of law. Instead, genuine issues of material fact continue to exist, and the matter should be remanded to the

trial court for further proceedings in the underlying declaratory judgment action.

¶ 157    For the above reasons, I dissent from the majority's decision and would reverse the trial court's grant of Corelis's motion to dismiss and remand for further proceedings.

---

*Professional Solutions Insurance Co. v. Karuparthy*, **2023 IL App (4th) 220409**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Rock Island County, No. 21-MR-818; the Hon. Kathleen E. Mesich, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Josh M. Kantrow and Jason W. Jochum, of Lewis, Brisbois, Bisgaard & Smith, LLP, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | John Malvik, of Winstein, Kavensky & Cunningham LLC, of Rock Island, for appellees Venkateswara R. Karuparthy and Integrative Pain Centers of America, Ltd. |
| | Brian K. Hetzer, of Duncan Law Group, LLC, of Chicago, for other appellee. |